# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA

FERROVIAL CONSTRUCTION US
CORP., NORTH PERIMETER
CONTRACTORS, LLC, FERROVIAL
CONSTRUCTION EAST, LLC AND
ALAMO NEX CONSTRUCTION,
LLC,

        Plaintiff,

   v.

JESUS GONZALEZ FERNANDEZ,
DOMINGO RODRIGUEZ
TORREGROSA, MICHAEL VALDES,
JOSE LUIS BELTRAN, MARIA
BREGEL SERNA, AND ACCIONA
CONSTRUCTION USA CORP.,

        Defendants.

CIVIL ACTION NO.
1:25-CV-0804-LMM

## DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................... iii

I.      INTRODUCTION ................................................................ 1

II.     STATEMENT OF RELEVANT FACTS ....................................... 3

        A.      Acciona Is Selected For The SR 400 Express Lanes Project .............. 4

        B.      Acciona Hires Additional Employees To Staff The SR 400
                Express Lanes Project ........................................................ 5

        C.      Acciona Hires Ms. Bregel To Work On Construction Bids ................ 7

        D.      None Of The Individuals Saved Any Downloaded Project Files
                Onto Acciona's Computer Systems ........................................ 7

        E.      Plaintiffs Did Not Enter Into Non-Disclosure Agreements With
                The Individuals Or Implement Procedures To Protect
                Confidentiality ................................................................ 9

                1.      Maintaining External Hard Drives Was The Accepted
                        Practice ................................................................ 10

                2.      None Of The Individuals Were Asked To Provide Their
                        External Hard Drives Or Delete Files Upon Departure
                        From The Company .................................................. 11

                3.      Plaintiffs' Counsel Demanded A Return Of Files Only
                        After The Individuals Already Departed Their Company
                        And Started At Acciona, And The Individuals
                        Cooperated ............................................................ 11

                        a)      Jesus Gonzalez ............................................. 11

                        b)      Domingo Rodriguez And Michael Valdes ................... 12

                        c)      Jose Luis Beltran And Maria Bregel ...................... 13

                4.      After The Individuals' Departures, Plaintiffs Initiated
                        New Confidentiality Measures ................................... 13

        F.      Acciona Acted Promptly To Ensure That It Has No
                Confidential Information From The Individuals' Former
                Employers .................................................................... 14

III.    ARGUMENT .................................................................... 15

# TABLE OF CONTENTS
## (continued)

A. Preliminary Injunction Standard ........................................................ 15

B. Plaintiffs Do Not Show A Likelihood Of Irreparable Harm .............. 16

    1. Plaintiffs Only Offer Conclusory Allegations Of Theoretical Harm. ................................................................. 16

C. Plaintiffs Cannot Show A Substantial Likelihood Of Success On The Merits ..................................................................................... 19

    1. Plaintiffs Do Not Identify Protectable Trade Secrets ............. 20

    2. Plaintiffs Also Do Not Identify Any Misappropriation And The Evidence Confirms There Was None ...................... 23

D. Plaintiffs Did Not Take Reasonable Measures To Keep The Information At Issue Secure ............................................................... 26

    1. Plaintiffs' Alleged Reasonable Measures Are Insufficient on Their Face ............................................................................ 27

    2. Plaintiffs Failed To Take Reasonable Measures To Protect The Allegedly Misappropriated Information ............. 30

E. Plaintiffs' Requested "Obey The Law" Injunction Is Improper ........ 33

F. Plaintiffs Cannot Show Harm That Outweighs Potential Harm To Defendants ..................................................................................... 34

G. Plaintiffs Cannot Show That Injunctive Relief Will Not Disserve Public Interest ...................................................................... 36

H. Plaintiffs' Verifications In Support Of Their Motion And Amended Complaint Provide No Concrete Evidentiary Basis .......... 37

IV. CONCLUSION ............................................................................................. 38

# TABLE OF AUTHORITIES

**Page**

CASES

*Abrasic 90 Inc. v. Weldcote Metals, Inc.*,
364 F. Supp. 3d (N.D. Ill. 2019) ........................................................32

*Amedisys Holding, LLC v. Interim Healthcare of Atlanta*,
793 F. Supp. 2d 1302 (N.D. Ga. 2011) .............................................17

*Am. II Grp., LLC v. Sourceability North America, LLC*,
No. 24-cv-01501, 2025 WL 81343 (M.D. Fla. Jan. 13, 2025) .........33

*AmNet Esop Corp. v. CrossCountry Mortg., Inc.*,
No. 23-cv-10, 2023 WL 9181488 (N.D. Ga. Dec. 18, 2023) ..............3

*Bacon v. Volvo Service Center, Inc.*,
597 S.E.2d 440 (Ga. Ct. App. 2004) ..................................................30

*Balearia Caribbean Ltd., Corp. v. Calvo*,
2019 U.S. Dist. LEXIS 36868 (S.D. Fla. March 6, 2019) .................32

*Broadleaf IT, LLC v. Walley*,
No. 24-cv-00303, 2024 WL 4329145 (S.D. Tex. Aug. 17, 2024) ......23

*CNA Fin. Corp. v. Local 743*
515 F. Supp. 942 (N.D. Ill. 1981) ......................................................22

*CMBB LLC v. Lockwood Mfg., Inc.*,
628 F.Supp.2d 881 (N.D. Ill. 2009) ...................................................32

*Diamond Power Int'l, Inc. v. Davidson*,
540 F. Supp. 2d 1322 (N.D. Ga. 2007) .........................................29, 30

*DM Trans, LLC v. Scott*,
38 F.4th 608 (7th Cir. 2022) ...................................................17, 13, 19

*Elgin Separation Solutions, LLC v. Dillon*,
No. 23-cv-00440, 2023 WL 6796201 (S.D. W.Va. Oct. 13, 2023)...................17

*Equifax Servs., Inc. v. Examination Mgmt. Servs., Inc.*,
453 S.E.2d 488 (Ga. Ct. App. 1994)...................................................29

*FieldTurf USA, Inc. v. Polyloom Corp. of Am.*,
No. 24-cv-2472, 2024 WL 4868292 (N.D. Ga. July 31, 2024)
..........................................................................20, 21, 33, 34, 37

*Golden Rd. Motor Inn, Inc. v. Islam*, 376 P.3d 151, 161 (Nev. 2016) ...................24

*H20 To Go, L.L.C. v. Martinez*,
No. 05-21353-CIV-LENARD, 2005 WL 2065220 (S.D. Fla. Aug.
22, 2005) ........................................................................17

*J.P. Morgan Sec. LLC v. Liban*,
No. 1:23-CV-00798-LMM, 2023 WL 3664820 (N.D. Ga. Mar. 1,
2023) ...............................................................................37

*Koe v. Noggle*,
688 F. Supp. 3d 1321 (N.D. Ga. 2023)...............................................16

*Krush Comms., LLC v. Lunex Telecom, Inc.*,
No. 13-cv-3167, 2014 WL 12069847 (N.D. Ga. Sept. 12, 2014) .................27,31

*M.C. Dean, Inc. v. City of Miami Beach*,
199 F. Supp. 3d 1349 (S.D. Fla. 2016) ..............................................21

*Magazine Publishers' Serv., Inc. v. Nam Marketing of Fl Gulf Coast,
Inc.*
No. 11-cv-442, 2011 WL 4902968 (M.D. Fla. Oct 13, 2011)...........................33

*Mallet & Co. Inc. v. Lacayo*,
16 F.4th 364 (3d Cir. 2021) ........................................................21, 34

*Mazurek v. Armstrong*,
520 U.S. 968 (1997)..................................................................15

*McDonald's Corp. v. Robertson*,
   147 F.3d 1301 (11th Cir. 1998) ........................................................15

*MDT Personnel, LLC v. Camoco, LLC*,
   2010 WL 5535066 (S.D. Fla. Dec. 8, 2010).....................................38

*MedQuest Ltd. v. Rosa*,
   No. 21-cv-5307, 2023 WL 2575051 (S.D.N.Y. Mar. 20, 2023) .................27, 28

*Middle East Forum v. Reynolds-Barbounis*,
   No. 19-5697, 2021 WL 84054 (E.D. Pa. Jan. 8, 2021) ......................................18

*N.E. Fla. Chapter of Ass'n of Gen. Contractors of Am. v. City of
   Jacksonville*,
   896 F.2d 1283 (11th Cir. 1990) ........................................................16

*Negative, Inc. v. McNamara*,
   No. 23-cv-08503, 2025 WL 814755 (E.D.N.Y. Mar. 13, 2025) .......................29

*Northstar Healthcare Consulting, LLC v. Magellan Health, Inc.*,
   No. 17-cv-1071, 2019 WL 4805558 (N.D. Ga. July 10, 2019).........................20

*Oxford Global Resources, LLC v. Onpoint Healthcare Solutions, Inc.*,
   2018 WL 3207380 (S.D. Cal. June 28, 2018) ....................................38

*Patterson Dental Supply, Inc. v. Daniel Pace & Henry Schein, Inc.*,
   No. 19-cv-1940, 2022 WL 18141871 (D. Minn. July 25, 2022).......................32

*Pliteq, Inc. v. Mostafa*,
   No. 23-CV-24868, 2025 WL 958251 (S.D. Fla. Mar. 31, 2025) ......................17

*Providence Title Co. v. Truly Title, Inc.*,
   547 F. Supp. 3d 585 (E.D. Tex. 2021).................................................22

*Rent Info. Tech., Inc. v. Home Depot U.S.A., Inc.*,
   268 F. App'x 557 (9th Cir. 2008) ......................................................20

*Siegel v. LePore,*
    234 F.3d 1163 (11th Cir. 2000) ............................................15, 16, 37

*Tough Turtle Turf, LLC v. Scott*, 537 P.3d 883, 887 (2023) ...................................24

*United States v. Lambert,*
    695 F.2d 536 (11th Cir. 1983) ........................................................16

**STATUTES**

18 U.S.C. § 1839(3)(A)...........................................................27

18 U.S.C. § 1839(5) ..............................................................23

Ga. Code. Ann. § 10-1-761(2) ...................................................23

O.C.G.A. § 10-1-761(4)(B)........................................................27

Tex. Civ. Prac. & Rem. Code § 134A.002(6)(A) ...................................27

**RULES**

Rule 65(d)........................................................................33

**OTHER AUTHORITIES**

11A Charles Alan Wright, et al., Federal Practice and Procedure §
    2949 (3d ed.) (April 2018 update) ..........................................38

## I.      INTRODUCTION

In late 2024 and early 2025, a few individuals joined Acciona Construction USA Corp. ("Acciona") to work on new highway construction projects in Atlanta. Three (Messrs. Gonzalez, Rodriguez, and Valdes) had worked for North Perimeter Contractors, LLC ("NPC") or Ferrovial Construction East, LLC ("FCE") in Atlanta, and two (Mr. Beltran and Ms. Bregel) had worked for Alamo NEX Construction ("ANC") in San Antonio. Plaintiffs accuse them of misappropriating files from their prior companies to benefit Acciona. They did not. Moreover, Plaintiffs have not and cannot show that the files constitute trade secrets, and in any event, to the best of Defendants' knowledge, all were returned and no copies exist on Acciona's computing systems or anywhere else. Plaintiffs' hyperbolic story about some "civil conspiracy to steal trade secrets" and "misappropriate a playbook," has no basis in the facts and is simply untrue.

*First*, there was no conspiracy to steal. The opposite is true. Like all new hires at Acciona, prior to their start date each individual attended Acciona training and signed acknowledgements that he or she would ***not*** bring information or files from a former employer. Acciona asked no one to bring confidential documents (Acciona expressly prohibited it), and no one did so. Acciona had no knowledge about any of the files until it was notified by Plaintiffs' counsel, and then Acciona instructed all employees to promptly return them. Nor did any of the individuals

conspire with one another to steal Plaintiffs' files, and Plaintiffs' motion provides no evidence otherwise.

**Second**, Plaintiffs did not take reasonable measures to protect confidentiality. To the contrary, Plaintiffs operated a loose system in which documentation was not tracked. Like most of their former colleagues and managers, the individuals kept drafts and copies of work documents, mixed with family pictures and personal files, on external hard drives that they connected to company laptops on a daily basis. Plaintiffs did not account for the copies or have any policies to monitor or control them. When the individuals left, Plaintiffs did not ask for the files or devices containing them to be returned or destroyed. To the contrary, some were told to retain the work files in case former colleagues needed assistance after the individuals left. Moreover, Plaintiffs did not have any of the individuals execute any non-disclosure, non-compete, or non-solicit agreement.

**Third**, nothing was stolen. After their departures (in some cases, not until months after) Plaintiffs' counsel demanded the files and each of the individuals fully cooperated. All files that the individuals could locate have been returned.

Plaintiffs have not come remotely close to showing any of the factors required for demonstrating that they are entitled to the drastic and extraordinary remedy of a preliminary injunction. With Plaintiffs taking no steps to protect their information as trade secrets, no evidence of harm, no showing of likely success,

and with declarations from all Defendants refuting the litany of false accusations, the Court should deny their motion.

## II.    STATEMENT OF RELEVANT FACTS

In its "Factual Background," Plaintiffs levy false accusations and complain about an emergency that does not exist.  Acciona did not want or need Plaintiffs' information.  Acciona is executing on a highway project that it already had won before it ever spoke with any of the individuals.  (Ex. 6, ¶¶9-10.)  It is building the highway according to Acciona's designs with its partners and consultants, and with comments from the client.  (Ex. 6, ¶¶5-9.)  As for bidding on new projects, Acciona is developing proposals based on its own capabilities and is not staffing these matters with anyone who worked on a competing effort for a former employer.  (Ex. 1, ¶¶1-8; Ex. 3, ¶¶1-7; Ex. 6, ¶12.)  As such, and per its ethical policies, Acciona never asked anyone to download documents or bring them to Acciona and was unaware of any downloaded files until notified by Plaintiffs' counsel.  (Ex. 1, ¶25, 37; Ex. 2, ¶18; Ex 3, ¶22; Ex. 4, ¶16; Ex. 5, ¶23; Ex. 6, ¶¶16-17.)

Plaintiffs did not protect the information they now claim as trade secrets. They never asked the individuals to enter into non-disclosure, non-compete, or non-solicit agreements, or any other protective agreement either during their employment or upon departure, (Ex. 1, ¶20; Ex. 2, ¶9; Ex 3, ¶10; Ex. 4, ¶7; Ex. 5,

be ¶10), but nonetheless, when asked, each individual provided to Plaintiffs'
counsel whatever external storage devices he or she had. (Ex. 1, ¶42; Ex. 2, ¶¶20-
23; Ex 3, ¶¶28-29; Ex. 4, ¶¶18-20; Ex. 5, ¶29-30.) They did not make copies of
any files onto any Acciona computer or network and no longer possess the files at
issue. (Ex. 1, ¶38; Ex. 2, ¶19; Ex 3, ¶23; Ex. 4, ¶18; Ex. 5, ¶24.) There simply is
no crisis.

### A. Acciona Is Selected For The SR 400 Express Lanes Project

Acciona is a wholly-owned subsidiary of Acciona Construcción, S.A., which
designs and builds bridges, tunnels, airport terminals, highways, and more. (Ex. 6,
¶2.) The company has built over 5,000 km of roads in twenty-five countries,
specializing in road projects that reduce emissions and minimize environmental
impacts on the work site. (*Id*.).

In 2023, Acciona was part of a corporate partnership selected to bid for
building express toll lanes for the SR 400 highway in Atlanta. (Ex. 6, ¶3.) In May
2024, the partnership submitted its proposal for the SR 400 Express Lanes project
to the Georgia Department of Transportation ("GDOT"). (Ex. 6, ¶4-5.) Shortly
after the proposal deadline, GDOT published summaries of the two competing bids
it received—the second proposal came from Ferrovial Construction US Corp.—
which revealed that the two proposals offered starkly different technical solutions
and concession pricing. (*Id*.) GDOT scored the two competing proposals and

selected Acciona's group in August 2024.  (*Id*.)

After the bid was awarded to Acciona, GDOT paid the unsuccessful bidder (Ferrovial) for the rights to its proposed designs and then provided them to Acciona.  (Ex. 6, ¶6.)  This is a common practice that enables a state highway commission to work with the winning bidder to evaluate possible modifications to the selected design unfettered by any intellectual property concerns.  (*Id*.)

Acciona's next step after the bid award was to work collaboratively with GDOT to finalize the detailed design.  All design changes were dictated by GDOT based on what it believed to be best for the public interest.  (Ex. 6, ¶7.)

## B.     Acciona Hires Additional Employees To Staff The SR 400 Express Lanes Project

In the highway construction industry, it is common for employees to move on to a different employer as a major project is being completed, especially if that prevents the employees from having to relocate geographically.  (Ex. 6, ¶8.)  At the same time, it is also common for highway construction companies to have open positions when they are awarded a new highway project.  (*Id*.)

Shortly after the bid was awarded, Acciona was contacted by Domingo Rodriguez, then a managing director at FCE.  (Ex. 2, ¶11; Ex. 6, ¶10.) Mr. Rodriguez had been managing construction projects for FCE for six years. (Ex. 2, ¶5.)  Acciona deemed Mr. Rodriguez's substantial experience working with

GDOT and highway construction projects to be a good fit and offered a position to Mr. Rodriguez, who started December 2, 2024.  (Ex. 2, ¶¶12, 17; Ex. 6, ¶10.)  At Acciona Mr. Rodriguez is only working on already-awarded projects, not bids. (Ex. 2, ¶3.)

Acciona also considered candidates from a few different companies for the role of Chief Engineer for the SR 400 Express Lanes project.  (Ex. 6, ¶12.) Mr. Gonzalez had been working at NPC on the project at the interchange of I285/400 in Atlanta.  (Ex. 1, ¶¶8, 24.)  Mr. Gonzalez is a Professional Engineer in Georgia and has significant experience working on various highway projects in several states and internationally.  (Ex. 1, ¶¶3, 7-8; Ex. 6, ¶12.)  Mr. Gonzalez was hired and started on December 2, 2024.  (Ex. 1, ¶35.)  He has since been staffed full-time on the already-awarded SR 400 Express Lanes project.  (Ex. 6, ¶12.) Mr. Gonzalez was unaware that Acciona was interviewing others from NPC until after he accepted Acciona's offer.  (Ex. 1, ¶26.)

During the same time period, Acciona contacted Michael Valdes about joining its human resources department.  (Ex. 4, ¶8.)  A director in Acciona's human resources department, who was a former colleague with Mr. Valdes, initiated contact.  (Ex. 4, ¶8.)  Mr. Valdes was a good fit because he had years of experience with highway construction human resources work.  (Ex. 6, ¶13.) Mr. Valdes joined Acciona on December 2, 2024.  (Ex. 4, ¶15.)

By late December 2024, Acciona determined that the SR 400 Express Lanes project required a Construction Director.  (Ex. 6, ¶14.)  Through a human resources manager, Acciona contacted Jose Luis Beltran, who at the time worked for Alamo NEX/Webber Construction in San Antonio.  (Ex. 3, ¶¶6, 11.)  Mr. Beltran had several decades of experience in highway construction management.  (Ex. 6, ¶14.)  On February 19, 2025, Mr. Beltran began his position at Acciona as Construction Director for the SR 400 Express Lanes project and since has been staffed full-time in that position.  (Ex. 6, ¶14.)

## C.    Acciona Hires Ms. Bregel To Work On Construction Bids

Mr. Beltran asked Acciona to interview his wife Maria Bregel, an experienced cost control manager at ANC.  (Ex. 5, ¶4; Ex. 6, ¶15.)  Acciona hired her as Construction Manager for Bids and Tender.  (Ex. 5, ¶1, 12; Ex. 6, ¶15.)  Of the individual defendants, she is the only one being staffed on current bid opportunities, but she did not work on bid opportunities at any prior employer. (Ex. 5, ¶¶2-3, 5; Ex. 6, ¶15)

## D.    None Of The Individuals Saved Any Downloaded Project Files Onto Acciona's Computer Systems

Acciona trains all recruits on company policies and requires them to sign agreements to comply with their terms.  (Ex. 6, ¶16.)

Relevant here, Acciona does not permit or tolerate an employee to use any

work product generated with or proprietary information obtained from a former employer. (Ex. 6, ¶16.) To that end, Acciona's Employee Proprietary Information and Inventions Agreement provides: "Former or Conflicting Agreements. During my employment with the Company, I will not disclose to the Company, or use, or induce the Company to use, any proprietary information or trade secrets of others. I have returned all property and confidential information belonging to all prior employers, if any. My performance of the terms of this Agreement will not breach any agreement to keep in confidence proprietary information acquired by me in confidence or in trust prior to my employment by the Company. I have not entered into, and I agree I will not enter into, any oral or written agreement in conflict herewith." (Ex. 8, Section III(B).)

Likewise, Acciona's Electronic Communications Policy states: "Receiving, downloading, sending, or uploading proprietary information without prior authorization is prohibited. Such information includes but is not limited to copyrighted materials, trade secrets, proprietary financial information, or similar materials." (Ex. 9, Section XI.)

Furthermore, Acciona's Code of Conduct confirms that use of information, including about competitors, that has been obtained inappropriately or without permission, is forbidden: "With regard to information about the market and competitors, ACCIONA's people may not use information that has been obtained

by inappropriate means or that may be confidential without the express authorisation of its rightful owners." (Ex. 7, Section 5.12.)

Prior to starting their employment with Acciona, Messrs. Gonzalez, Rodriguez, Valdes, and Beltran and Ms. Bregel completed their training and executed these agreements. (Ex. 1, ¶28; Ex. 2, ¶13; Ex. 3, ¶13; Ex. 4, ¶10; Ex. 5, ¶13; Ex. 6, ¶16.)

At no point in time, including during recruitment, did anyone at Acciona ask any of the individuals to download documents from their current employers or bring them to Acciona. (Ex. 1, ¶37; Ex. 2, ¶18; Ex. 3, ¶22; Ex. 4, ¶16; Ex. 5, ¶23; Ex. 6, ¶17.) Nor did any of the individuals store any downloaded project files onto Acciona's computing systems or send them using Acciona's email system. (Ex. 6, ¶18.) As was Acciona's policy, it hired each individual based on positional need and the candidate's qualifications and aptitude, and not for the documents that they were prohibited to bring with them. (Ex. 6, ¶17.)

### E. Plaintiffs Did Not Enter Into Non-Disclosure Agreements With The Individuals Or Implement Procedures To Protect Confidentiality

NPC, ANC and FCE, where the individuals previously worked, did not have any of the individuals sign non-disclosure agreements, non-compete agreements, or non-solicit agreements. (Ex. 1, ¶¶20-21; Ex. 2, ¶9; Ex. 3, ¶10; Ex. 4, ¶7; Ex. 5, ¶10.) Employees were expected to share files and work collaboratively with joint

venture partners, various subcontractors, and the customer, but were provided no

instructions about marking documents as trade secrets or confidential or restricting

access. (Ex. 1, ¶¶10-11; Ex. 2, ¶8; Ex. 3, ¶9; Ex. 4, ¶6; Ex. 5, ¶9.)

### 1. Maintaining External Hard Drives Was The Accepted Practice

At each of their prior employers, Messrs. Gonzalez, Rodriguez, and Valdes

maintained copies of project files on either or both company-provided and personal

external hard drives that they used everyday and brought home. (Ex. 1, ¶9; Ex. 2,

¶6; Ex. 4, ¶4.) The individuals' colleagues, including their supervisors, maintained

the same practice. (Ex. 1, ¶14) This was because employees worked on large files

that would be difficult to access and store on the companies' central servers.

(Ex. 1, ¶¶9-12; Ex. 2, ¶7; Ex. 4, ¶¶4-5.) Several employees often would need to

work on the same files, so it was expected that they would download a local copy

of the file onto their external hard drive, prepare their edits, and then upload the

next version for others to review. (*Id.*)

When a project was completed, employees were to download a final copy to

maintain a consistent set of files. (Ex. 1, ¶13.) It was also common for employees

to use those same external hard drives to store their personal information, including

banking and tax information, personal passwords, immigration papers, and photos.

(Ex. 1, ¶16; Ex. 2, ¶6; Ex. 4, ¶4.) At no point during their employment were any of

these individuals asked to delete any files from their external drives.  (Ex. 1, ¶32; Ex. 2, ¶15; Ex. 3, ¶15; Ex. 4, ¶11; Ex. 5, ¶17.)

### 2. None Of The Individuals Were Asked To Provide Their External Hard Drives Or Delete Files Upon Departure From The Company

All of the individuals had similar experiences when they resigned from employment with Plaintiffs.  None were required to sign anything or even asked about their external storage devices or to delete any files.  (Ex. 1, ¶32; Ex. 2, ¶15; Ex. 3, ¶15; Ex. 4, ¶11; Ex. 5, ¶17.)  None made any effort to hide their external hard drives.  (Ex. 1, ¶31; Ex. 2, ¶¶14-15; Ex. 3, ¶15; Ex. 4, ¶¶11-12; Ex. 5, ¶¶16-17.)  To the contrary, several were asked to keep their project files to be a resource in case former colleagues had questions.  (Ex. 3, ¶17; Ex. 5, ¶20.)

### 3. Plaintiffs' Counsel Demanded A Return Of Files Only After The Individuals Already Departed Their Company And Started At Acciona, And The Individuals Cooperated

To the best of their knowledge, none of the individuals has any copy, electronic or otherwise, of any file downloaded during their employment with Plaintiffs.  None stored any file on any Acciona computer or network, and none used Acciona's email system to send any such file.  (Ex. 1, ¶38; Ex. 2, ¶19; Ex. 3, ¶23; Ex. 4, ¶16; Ex. 5, ¶24.)

#### a) Jesus Gonzalez

On December 6, 2024, four days after leaving NPC, Jesus Gonzalez received

a letter from Plaintiffs' counsel stating that having project files was a violation of his obligations as a licensed professional engineer.  (Ex. 1, ¶39.)  Mr. Gonzalez immediately contacted the Georgia Professional Engineers Board to ask whether, as a signatory on design documents, he had an obligation to maintain a copy of his files.  (Ex. 1, ¶41.)  He was told that he was not required to keep the files because NPC was obligated to.  (*Id*.)  Shortly thereafter, he received further contact from NPC, telling him that he needed to delete any documents pertaining to any bid, and so he followed that instruction.  (*Id*.)

NPC then told him to provide his hard drive, and the next day he did so. Mr. Gonzalez heard nothing further from his former employer until he learned that FCE and NPC filed a lawsuit against him on February 15, 2025.[1]  (Ex. 1, ¶42.)

### b)    Domingo Rodriguez And Michael Valdes

On February 27, 2025, nearly three months after their departures from NPC, Messrs. Rodriguez and Valdes received letters from Plaintiffs' counsel regarding their external drives.  (Ex. 2, ¶20; Ex. 4, ¶17.)  Both promptly retained counsel and provided all drives to them, and the drives were then provided to Plaintiffs'

---

[1] On May 5, 2025, Plaintiffs' counsel identified additional thumb drives. Mr. Gonzalez promptly returned any that he could find.  (Ex. 1, ¶44.)

counsel.[2]  (Ex. 2, ¶¶20-23; Ex. 4, ¶¶17-19.)

### c) Jose Luis Beltran And Maria Bregel

When Mr. Beltran and Ms. Bregel left Alamo NEX in mid-February, management requested they keep their work files, laptops and phones in the hope they could provide assistance in the future.  Despite this, a few days later Plaintiffs' counsel demanded they provide all computing devices.  (Ex. 3, ¶24; Ex. 5, ¶25.)  They retained counsel and through him expressed their willingness to fully cooperate, but received no response.  (Ex. 3, ¶¶25-26; Ex. 5, ¶¶26-27.)  Since then, all files have been returned.  (Ex. 3, ¶¶28-29; Ex. 5, ¶¶29-30.)

### 4. After The Individuals' Departures, Plaintiffs Initiated New Confidentiality Measures

Only recently did Plaintiffs begin requesting that employees delete project files from external hard drives prior to departure.  For example, Plaintiffs are now specifically interviewing departing employees and reviewing external hard drives to delete work files before departure.  (Ex. 1, ¶46.)  Such procedures did not occur for any of the individuals named as defendants in this action.  (Ex. 1, ¶32; Ex. 2, ¶15; Ex. 3, ¶¶14-15; Ex. 4, ¶11; Ex. 5, ¶¶16-17.)  Also, after the individuals'

---

[2] Last week, Plaintiffs' counsel for the first time identified additional external drives that they believed were in the possession of Messrs. Fernandez and Valdes.  Both pledged to promptly return any of those that they could find.  (Ex. 1, ¶44; Ex. 4, ¶19.)

departures, Plaintiffs recently implemented a formal policy change where employees no longer are to use external drives to maintain copies of project files. (Ex. 1, ¶¶19, 46.)

> ### F. Acciona Acted Promptly To Ensure That It Has No Confidential Information From The Individuals' Former Employers

On February 27, 2025, Plaintiffs' counsel sent a "Demand Letter" to Acciona regarding alleged file downloads by Plaintiffs' former employees. Acciona acted quickly. (Ex. 6, ¶20.) On March 7, 2025, Acciona sent a legal hold notice instructing employees to maintain all documents and communications that may be relevant to the present dispute. (*Id.*, ¶21.) Each recipient was required to respond to acknowledge agreement to comply with the instruction. (*Id.*) On the same date, Acciona's legal department also sent a letter to the same recipients reminding them of their obligations under Acciona's code of conduct and other policies, including that it is forbidden to use information that has been obtained inappropriately or without permission. (*Id.*, ¶22) Each recipient was also required to respond to acknowledge agreement to comply with the instructions. (*Id.*)

After performing a detailed and thorough investigation, Acciona has not found any files containing any project, design or technical document generated by Plaintiffs on any Acciona laptop computer, mobile device, cloud account, or project folder, with the exception of documents and information provided by

GDOT, which Acciona is rightfully permitted access pursuant to the terms of GDOT's procurement process.  (*Id.*, ¶18.)

On April 7, Acciona informed Plaintiffs' counsel of the outcome of its efforts, but rather than respond directly to Acciona, Plaintiffs' amended their lawsuit, filed instant motions, and made false statements about Acciona.  (Am. Compl. ¶86-87.)

## III.   ARGUMENT

### A.   Preliminary Injunction Standard

A preliminary injunction is "an extraordinary and drastic remedy."  *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (quoting *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir. 1998)).  A district court may award injunctive relief only if the moving party demonstrates:  "(1) it has a substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest."  *Id.*  Plaintiffs maintain a high burden, as they must demonstrate "by a clear showing" satisfaction of all four of the necessary elements.  *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (emphasis and citation omitted).  A preliminary injunction is "the exception rather than the rule," requiring Plaintiffs to "clearly carry the burden of persuasion."

*United States v. Lambert*, 695 F.2d 536, 539 (11th Cir. 1983). Plaintiffs do not come close to meeting this standard.

**B.      Plaintiffs Do Not Show A Likelihood Of Irreparable Harm**

Plaintiffs' request for preliminary injunction fails at the outset because they cannot establish that there is a likelihood of irreparable harm. "The absence of a substantial likelihood of irreparable injury would, standing alone, make preliminary injunctive relief improper." *Siegel*, 234 F.3d at 1176. Harm "is 'irreparable' only if it cannot be undone through monetary remedies." *Koe v. Noggle*, 688 F. Supp. 3d 1321, 1357 (N.D. Ga. 2023) (quoting *N.E. Fla. Chapter of Ass'n of Gen. Contractors of Am. v. City of Jacksonville*, 896 F.2d 1283, 1285 (11th Cir. 1990)). "The asserted irreparable injury must be neither remote nor speculative, but actual and imminent." *Siegel*, 234 F.3d at 1176 (internal citation omitted).

**1.      Plaintiffs Only Offer Conclusory Allegations Of Theoretical Harm.**

Plaintiffs assert irreparable harm based on a false premise that the individuals "have continued to maintain their possession of trade secrets as employees of Acciona." (Mot. at 33, ¶52). All of the individuals have cooperated to provide their hard drives to Plaintiffs' counsel and attest that they have no access to any downloaded file. (Ex. 1, ¶¶42-45; Ex. 2, ¶¶22-24; Ex. 3, ¶¶25-29;

Ex. 4, ¶¶18-20; Ex. 5, ¶¶26-30.)  Acciona's representative attests that the company

was not aware that the individuals had these drives but nonetheless confirms that

no downloaded files are on Acciona's computing systems.  (Ex. 6, ¶17-18).  *See,*

*e.g.*, *DM Trans, LLC v. Scott*, 38 F.4th 608, 622 (7th Cir. 2022) (holding

defendant's willingness to return or destroy alleged confidential information

weighed in favor of denying preliminary injunction for lack of irreparable harm).[3]

Plaintiffs' citations to cases where preliminary injunctions were ordered are

inapposite because Defendants are not in a position to use Plaintiffs' information.[4]

Despite asserting that there is a "very real" threat (Mot. at 33-34), Plaintiffs only

speak to unspecified purported "injuries," without support.  *See H20 To Go, L.L.C.*

*v. Martinez*, No. 05-21353-CIV-LENARD, 2005 WL 2065220, at *5 (S.D. Fla.

---

[3]*See also Pliteq, Inc. v. Mostafa*, No. 23-CV-24868, 2025 WL 958251 at *22 (S.D. Fla. Mar. 31, 2025) (finding no irreparable harm when defendant deleted all identified files); *Elgin Separation Sols., LLC v. Dillon*, No. 2:23-CV-00440, 2023 WL 6796201, at *6 (S.D. W.Va. Oct. 13, 2023) (finding defendant's assurances that "it has readily searched for, identified, and returned all [of defendant's documents] in its possession" and subsequently only used publicly available information and personal knowledge "undercuts a finding of irreparable harm where the injunctive relief available has previously been attained").

[4]Plaintiffs' citation to *Amedisys Holding* (Mot. at 33-34), where the defendant was found to have made repeated misrepresentations about their downloading of trade secrets, is particularly dubious because Plaintiffs do not allege that the individuals here hid or made misrepresentations regarding their external hard drives. *See Amedisys Holding, LLC v. Interim Healthcare of Atlanta*, 793 F. Supp. 2d 1302, 1314 (N.D. Ga. 2011).

Aug. 22, 2005) (denying preliminary injunction where the arguments were mere beliefs and "conclusory claims about the theoretical harm that may result").

Plaintiffs' assertion that "Acciona can unlawfully compete against and harm Plaintiffs" (Mot. at 34) is also wholly unsupported. Messrs. Gonzalez, Rodriguez, Valdes, and Beltran are not staffed on bids where they are competing against Plaintiffs. (Ex. 1, ¶¶5-6; Ex. 2, ¶¶3-4; Ex. 3, ¶¶4-5; Ex. 4, ¶¶1-2; Ex. 5, ¶¶2-3.) Rather, they are working on the execution of the SR 400 Express Lanes project, which was already awarded months before they interviewed at Acciona. (Ex. 1, ¶¶1-2; Ex. 2, ¶2; Ex. 3, ¶¶1-4; Ex. 4, ¶1-2; Ex. 6, ¶¶9-14.) Their work is not putting Plaintiff at any competitive disadvantage.[5] Ms. Bregel is working on a bid but it is not competitive to Alamo NEX, her former employer, and she did not work on any bids for any prior employer. (Ex. 5, ¶¶2-6; Ex. 6, ¶15.) *See Middle E. F. v. Reynolds-Barbounis*, No. CV 19-5697, 2021 WL 84054, at *5 (E.D. Pa. Jan. 8, 2021) (finding plaintiff failed to establish irreparable harm where it

---

[5]Plaintiff's assertion that their injury "will prove difficult to measure with monetary precision" is also completely unsupported. (Mot. at 34.) Aside from how Plaintiff makes this assertion in a conclusory manner, any documents allegedly misappropriated related to the SR 400 project cannot be the basis of future harm because Acciona and Plaintiff are no longer actively competing. *See Strategic Venue Partners, LLC v. Braunschweig*, No. 23-61653-CIV, 2024 WL 670470 at *5 (S.D. Fla. Jan. 3, 2024) (finding no irreparable harm after defendant performed "one-off project" in breach of non-compete agreement).

"presented no evidence that its confidential information would be relevant to [the former employee's] current employment").

As addressed *infra*, Plaintiffs have not demonstrated a likelihood of success on the merits at least because they failed to take reasonable measures to protect confidentiality. Failing to conduct reasonable exit procedures also weighs against a finding of irreparable harm. *See*, *e.g.*, *DM Trans*, 38 F.4th at 622 (holding that plaintiff's decisions to allow individual defendants to download purported trade secrets onto their personal devices, not asking defendants to produce their personal devices for inspection upon leaving the company, and failing to ask defendants whether they had company data on their devices rendered plaintiff's claim of irreparable harm "hollow"). Not only did Plaintiffs fail to ask about external hard drives in exit interviews (when they knew that virtually all employees use them for storing project files) (Ex. 1, ¶¶32-33; Ex. 2, ¶¶15-16; Ex. 3, ¶¶15-17; Ex. 4, ¶12; Ex. 5, ¶17), FCE waited several months after Messrs. Rodriguez and Valdes left the company to request the return of files, and ANC's management told Mr. Beltran and Ms. Bregel to keep their files. (Ex. 2, ¶17, 20; Ex. 3, ¶17; Ex. 4, ¶¶15, 17; Ex. 5, ¶20.) Plaintiffs' lax nature about document management or retrieval certainly does not indicate any exigency or immediate threat.

**C. Plaintiffs Cannot Show A Substantial Likelihood Of Success On The Merits**

Plaintiffs' motion relies entirely on conjecture and speculation to justify the extraordinary remedy of preliminary injunctive relief. Plaintiffs do not reasonably identify what files on the drives (that are not in Defendants' possession anyway) contain trade secrets, and do not demonstrate any misappropriation occurred.

### 1. Plaintiffs Do Not Identify Protectable Trade Secrets

A motion for preliminary injunction must fail when "it is unclear what trade secrets Plaintiff seeks to protect." *FieldTurf USA, Inc. v. Polyloom Corp. of Am.*, No. 1:24-CV-2472, 2024 WL 4868292, at *3 (N.D. Ga. July 31, 2024). Here, Plaintiffs have not met their burden to identify and prove that a protectable trade secret exists under the GTSA, DTSA, or TUTSA. *Northstar Healthcare Consulting, LLC v. Magellan Health, Inc.*, No. 1:17-CV-1071, 2019 WL 4805558, at *41 (N.D. Ga. July 10, 2019) ("[A] plaintiff . . . must identify the trade secrets and carr[ies] the burden of showing that they exist." (quoting *Rent Info. Tech., Inc. v. Home Depot U.S.A., Inc.*, 268 F. App'x 557, 558 (9th Cir. 2008)).

Plaintiffs fail to identify with any particularity the alleged trade secrets that were misappropriated. Nowhere do Plaintiffs actually identify their purported trade secrets. Plaintiffs speak in vague generalities, alleging the individuals transferred documents or files related to various projects onto an external hard drive, but never explain how those documents are trade secrets. (Mot. at 12–13, 17-18, 25-26.) Plaintiffs mention only broad categories of information (including

"pricing, bidding strategy, project management and completion strategies"), but such a list is insufficient to identify a trade secret because it "could be used to describe documents found in any number of corporations." *FieldTurf*, 2024 WL 4868292, at *3 (quoting *Mallet & Co. Inc. v. Lacayo*, 16 F.4th 364, 382 (3d Cir. 2021) ("At a minimum, the subject matter of the trade secret must be described with sufficient particularity to separate it from matters of general knowledge in the trade or of special knowledge of those persons who are skilled in the trade . . . .") (internal citation omitted). Plaintiffs' callout of 10 documents (out of allegedly "hundreds of thousands") by their filenames fares no better because there is no indication as to the contents other than the conclusory allegation that they are "commercially sensitive." (Mot. at 17.) Plaintiffs' proposed order confirms and compounds the problem, requesting the Court require certain conduct as to their alleged "trade secrets" without ever identifying or defining them. (Dkt. 10-2.)

More generally, highway design documents are not subject matter protectable by trade secret; they are a matter of public concern, and limited in use to a specific highway project. Files that relate to completed highway projects do not have value by staying secret. Courts have found information furnished pursuant to a public contract to be not a trade secret when, in part, the data provided by contractors are "property of [the government] and may be used by [the government] without restriction." *M.C. Dean, Inc. v. City of Miami Beach, Fla.*,

199 F. Supp. 3d 1349, 1356-57 (S.D. Fla. 2016) (granting motion to dismiss). Here, Plaintiffs do not establish that any documents or information on public contracts that they identify can be trade secrets, particularly because GDOT and other governmental agencies likely own the information. *See id.*

Lastly, any employee information or files allegedly on Mr. Valdes's drive (which he previously provided to Plaintiffs' counsel in March), may be private, but it is not a trade secret. (Ex. 4, ¶¶13, 18-19.) Employee names, job titles, job tenure, and contact information can be located through a simple LinkedIn search (and in fact, Acciona contacted Mr. Valdes through LinkedIn). (Ex. 4, ¶8, 15.) Moreover, such information does not belong to Plaintiffs; it belongs to the employees (who may be very interested in having their information disseminated in the hope of finding new employment). Likewise, compensation information does not qualify as a trade secret under the DTSA, GUTSA or TUTSA. *See Providence Title Co. v. Truly Title, Inc.*, 547 F. Supp. 3d 585, 609-10 (E.D. Tex. 2021) (finding employee compensation information not a trade secret, and noting "business information is not necessarily a trade secret simply because it is confidential").[6]

---

[6] *See also C N A Fin. Corp. v. Loc. 743 of Int'l Bhd. Of Teamsters, Chauffers, Warehousemen & Helpers of Am.*, 515 F. Supp. 942, 946 (N.D. Ill. 1981) (finding employee lists and other confidential information did not constitute trade secrets and granting motion to dismiss); *Best Label Co. v. Custom Label &*

## 2. Plaintiffs Also Do Not Identify Any Misappropriation And The Evidence Confirms There Was None

To establish their claim for misappropriation, Plaintiffs must show "(a) acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or (b) disclosure or use of a trade secret of another without express or implied consent . . . ." *AmNet Esop Corp. v. CrossCountry Mortg., Inc.*, No. 2:23-CV-10, 2023 WL 9181488, at *11 (N.D. Ga. Dec. 18, 2023) (citing both 18 U.S.C. § 1839(5) and GA. CODE. ANN. § 10-1-761(2)); *see also Broadleaf IT, LLC v. Walley*, No. 4:24-CV-00303, 2024 WL 4329145, at *5 (S.D. Tex. Aug. 17, 2024) (analyzing the TUTSA and DTSA claims together due to "near identical" elements and definitions").

As a first matter, as to Acciona, courts have held that an employer is not liable for misappropriation where it did not know and had no reason to know of the alleged misappropriation by its employees. *See, e.g., PPEX, LLC v. Buttonwood, Inc.*, No. 21-cv-53, 2021 WL 7210417 (D. Wy. Sept. 7, 2021). The *PPEX* court

---

*Decal, LLC*, No. 19-CV-03051, 2022 WL 1189884, at *5 (N.D. Cal. Apr. 20, 2022) (finding password-protected salary and compensation information not a trade secret because "[I]t is axiomatic that simply because information is password protected, that does not automatically render it a trade secret. [California's trade secret act] does require secrecy to establish something as a trade secret, but it also requires the trade secret to be something from which the holder can derive independent economic value 'from not being generally known.'").

denied the preliminary injunction motion in a trade secrets misappropriation case brought by a company against two former employees and their new employer. Among the reasons for the denial was that the record showed the new employer "did not know, nor should it have known, that [the two former employees] retained the Customer and Supplier Lists improperly and were using them for [its] benefit improperly. Knowledge or reason to know a trade secret was acquired through improper means is a requirement for the misappropriation element. This is an independent reason that [plaintiff] is not entitled to a preliminary injunction." *Id.* at 12.[7] Here, Acciona neither knew nor had reason to know that any of the individuals brought with them files containing potential trade secrets. Acciona policies expressly prohibit such conduct, and Acciona provided these policies to the individuals and confirmed their agreement to comply. (Ex. 6, ¶16.) The individuals each confirmed that nobody at Acciona ever requested they download, bring, or otherwise use any documents or files from or related to any work they performed while working for Plaintiffs. (Ex. 1, ¶37; Ex. 2, ¶18; Ex. 3, ¶22; Ex. 4, ¶16; Ex. 5, ¶23.) Simply put, Acciona did not know or have reason to know that

---

[7] *See also Golden Rd. Motor Inn, Inc. v. Islam*, 376 P.3d 151, 161 (Nev. 2016) (finding under Nevada UTSA that a new employer is not liable due to its lack of knowledge and steps it took to ensure it did not receive trade secret information), superseded by statute on other grounds as recognized in *Tough Turtle Turf, LLC v. Scott*, 537 P.3d 883, 887 (2023).

the individuals had these drives and any files or documents belonging to Plaintiffs. (Ex. 6, ¶17.)

In addition, to its knowledge Acciona never disclosed or used any of Plaintiffs' potential trade secrets in any manner whatsoever, and there's no evidence to the contrary. When Acciona learned of Plaintiffs' claims about the individuals' alleged conduct, it took immediate action to prevent use or disclosure. After arranging to preserve all relevant evidence, Acciona instructed the individuals to immediately provide to Plaintiffs any and all external storage devices, files, and documents that potentially belonged to them. (Ex. 6, ¶¶19-20.) Acciona further instructed the individuals to ensure no such files or documents were uploaded onto Acciona's networks and to confirm they no longer had access to any of the alleged files or documents or any copies or notes of the same. (*Id.*) Acciona also confirmed for its own part that none of the alleged files or documents were in fact uploaded onto Acciona's networks. (Ex. 6, ¶18.)

Regarding the individuals, they neither knew nor had reason to know they were acquiring any purported trade secrets by improper means. Upon their departures, Mr. Beltran and Ms. Bregel were specifically asked by their management to retain their work files so that they could be of assistance to answer questions from former colleagues. (Ex. 3, ¶¶17-18; Ex. 5, ¶¶16-18, 20.) Mr. Gonzalez understood that he was duty-bound to maintain the files as a licensed

Professional Engineer.  (Ex. 1, ¶31.)  Mr. Rodriguez stayed available after departing NPC to keep negotiating with the customer on his former employer's behalf and to advise his former reports.  (Ex. 2, ¶¶14, 16.)  No one told any of the individuals that they should not keep their external hard drives, that they should delete files, or that files had trade secrets.  (Ex. 1, ¶32; Ex. 2, ¶15; Ex. 3, ¶15; Ex. 4, ¶11; Ex. 5, ¶17.)  Considering Plaintiffs' employment practices and that the highway design documents become a matter of public record, there is no reason for these individuals to believe they are trade secrets.

Further, the individuals did not disclose or use trade secrets without consent. To the contrary, they used the files freely during their employment and returned them when requested.  They attest they never disclosed to Acciona that they had the drives and that they never stored any project files from their drives on Acciona's computers or networks.  (Ex. 1, ¶¶37-38; Ex. 2, ¶19; Ex. 3, ¶¶22-23; Ex. 4, ¶16; Ex. 5, ¶¶23-24.)  Acciona also attests that it checked its systems to confirm this.  (Ex. 6, ¶18.)  Mr. Valdes acknowledges that he briefly opened a few files and transferred some resumes, but attests that he did not use them for his work at Acciona.  (Ex. 4, ¶15.)

### D.  Plaintiffs Did Not Take Reasonable Measures To Keep The Information At Issue Secure

For information to qualify as a "trade secret," Plaintiffs must prove that they

have "taken reasonable measures to keep such information secret," among other requirements. 18 U.S.C. § 1839(3)(A); *see also* GA. CODE ANN. § 10-1-761(4)(B); TEX. CIV. PRAC. & REM. CODE § 134A.002(6)(A). Plaintiffs fail here both because the measures alleged in their motion are insufficient and the evidence proves reasonable measures were in fact not taken.

### 1. Plaintiffs' Alleged Reasonable Measures Are Insufficient on Their Face

Plaintiffs' motion ignores that none of the individuals signed non-disclosure, non-compete, or non-solicit agreements. *See MedQuest Ltd. v. Rosa*, No. 21-CV-5307, 2023 WL 2575051, at *5 (S.D.N.Y. Mar. 20, 2023) ("Plaintiff has not alleged, for example, that Defendants … signed a non-disclosure agreement or a non-compete/non-solicitation agreement"); *Core SWX, LLC v. Vitc Grp. Holdings, Inc.*, No. 21-CV-1697, 2022 WL 3588081, at *8 (E.D.N.Y. July 14, 2022) ("[T]here are no allegations that [the] employee signed a confidentiality or non-disclosure agreement"). The lack of such agreements dooms Plaintiffs' argument that they took reasonable measures. *See Krush Commc'ns., LLC v. Lunex Telecom, Inc.*, No. 1:13-CV-3167, 2014 WL 12069847, at *12 (N.D. Ga. Sept. 12, 2014) (finding company failed to take reasonable steps to protect the secrecy of its information where persons with access had not agreed, in writing or otherwise, not to disclose such information to third parties).

Without this, Plaintiffs are left to argue their "reasonable measures" consist

of a few company policies and their computer log-in.  (ECF 10-1 at 7–8.)  These

allegations are conclusory and, when considered together with Plaintiffs' failure to

allege other commonly-used protections, fail on their face for several reasons.

*First*, Plaintiffs' policies are too general to provide specific guidance or

instructions about confidentiality.  The "Procedure for the Use of Technological

Resources" includes a single conclusory sentence asserting that it "serves the

purpose of safeguarding the integrity, confidentiality, and availability of

Ferrovial's information" without further explanation and without acknowledging

that by its terms it does not apply to employees in Georgia.  (Mot. at 7, Dkt 9-6,

Ex. 2, § 3.)  And although Plaintiffs assert that the "Competition Policy" "prohibits

the exchange of confidential business information among competitors," a closer

review reveals that it concerns itself with competition law compliance, and even

provides that commercially sensitive information can be disclosed "in a number of

contexts."  (ECF 9-7 at 6.)  Importantly, Plaintiffs never identify when and how the

individual defendants received, acknowledged, and were trained on these policies.

*See MedQuest Ltd*, 2023 WL 2575051, at *5 (distributing a policy manual with a

section on confidential and proprietary information is not sufficient, particularly

where the defendants had not specifically acknowledged and agreed to be bound

by them).  Indeed, even "requiring all employees to sign generalized

confidentiality agreements is generally not, standing alone, sufficient to demonstrate reasonable efforts." *Diamond Power Int'l, Inc. v. Davidson*, 540 F. Supp. 2d 1322, 1334 (N.D. Ga. 2007) (citing *Equifax Servs., Inc. v. Examination Mgmt. Servs., Inc.*, 453 S.E.2d 488, 493 (Ga. Ct. App. 1994)).

**Second**, an employer's general computer log-in acknowledgments cannot be construed as a reasonable measure. In *Negative, Inc. v. McNamara*, No. 23-CV-08503, 2025 WL 814755 (E.D.N.Y. Mar. 13, 2025), the plaintiff alleged that its reasonable measures included "that its Google Drive and Shopify account require 'an intentional sign-in with multiple authentication factors,'" that certain files the defendant accessed were accessible on a need-to-know basis and not accessible, downloadable, or printable by all employees, and employees lose access to the files upon separation of employment. *Id.* at *6. Naturally, the court was skeptical:

> If this Court were to hold that these actions constituted 'reasonable measures' to keep information secret under the DTSA, the implications would be sweeping indeed; essentially, *it would mean that many of the basic procedures that line employees use to log into the computer systems at their place of work every day qualify as 'reasonable measures' from which their employers could later deem that information to be 'trade secrets*.'

*Id.* (emphasis added). This Court should express the same skepticism here, particularly because Plaintiffs' general log-in acknowledgments are not limited to only those who have access to confidential information, rather they apply "to all employees with access to Ferrovial's computing network" (ECF 10-1 at 8).

*Third*, a plaintiff "must demonstrate that it has taken reasonable efforts to maintain its secrecy by not widely distributing the information to its employees without proper controls." *Diamond Power Int'l*, 540 F. Supp. at 1333 (citing *Bacon v. Volvo Service Center, Inc.*, 597 S.E.2d 440, 443–44 (Ga. Ct. App. 2004)). In *Diamond Power Int'l*, the court determined the plaintiff did not take reasonable measures to keep a file secret where it (i) had not labeled the file as confidential or otherwise communicated the confidentiality of the file directly to its employees, (ii) had not directed its employees to maintain the secrecy of the file (other than through a general confidentiality agreement which did not expressly mention the file), and (iii) had not tracked or otherwise regulated the use of the file. *Id.* at 1335. Here, Plaintiffs fail to identify any corporate policies they use to limit distribution or label, mark, and/or designate documents as confidential information or otherwise protect their trade secrets. Thus, Plaintiffs' motion fails on its face.

### 2. Plaintiffs Failed To Take Reasonable Measures To Protect The Allegedly Misappropriated Information

Plaintiffs have failed to take reasonable measures to protect the broad categories of documents they have identified.

*First*, neither NPC, FCE, or ANC ever required or even requested that any of these individuals sign a non-disclosure, non-compete or non-solicit agreement. Plaintiffs' failure to require these individuals to execute any such document is

sufficient grounds to find that Plaintiffs failed to take reasonable measures to protect confidentiality.  *See Krush Commc'ns.*, 2014 WL 12069847, at *12.

**Second**, the individuals each attest that they were not aware of any of the corporate policies cited in Plaintiffs' motion, did not sign acknowledgements to agree to be bound by them, and were not trained on them.  (Ex. 4, ¶7.)  And no instructions, training or practice was ever given to the individuals to mark documents as confidential or otherwise protect or restrict access to them.  (Ex. 1, ¶18; Ex. 2, ¶8; Ex. 3, ¶9; Ex. 4, ¶6; Ex. 5, ¶9.)

**Third**, Plaintiffs had a longstanding culture of employees storing project files on external hard drives, mixing storage of personal data with company data on those hard drives, and taking their hard drives upon termination of employment. None of the individuals were ever told not to store work files in this manner; in fact, their managers and supervisors maintained the same practice.

**Fourth**, Plaintiffs never asked any of the individuals to delete any files from their external storage devices—neither during their employment nor as they were leaving.  (Ex. 1, ¶32; Ex 2, ¶15; Ex. 3, ¶15; Ex. 4, ¶11; Ex. 5, ¶17.)  Numerous courts have found that failing to conduct proper exit interviews and ask for return of information before departure indicates a lack of reasonable protection of alleged trade secrets.  *See DM Trans*, 38 F.4th at 622 (employer that allowed employees to use personal devices to access alleged trade secrets failed to protect its information

where the company conducted exit interviews without asking to inspect the devices, asking whether the outgoing employees had company data on the devices or asking them to remove company data); *Balearia Caribbean Ltd., Corp. v. Calvo*, 2019 U.S. Dist. LEXIS 36868, *23-24 (S.D. Fla. March 6, 2019) (under the DTSA, plaintiff failed to protect information as trade secrets where, among other things, employee was not asked to do an exit interview and not asked to delete or return confidential information stored in a personal laptop).[8]  Plaintiffs even requested that some of the individuals should keep their files.  (Ex. 3, ¶17; Ex. 5, ¶20.)

*Fifth*, Plaintiffs had at their disposal a process for marking documents they shared with GDOT as "trade secrets" if they wanted.  These procedures applied to the SR 400 Express Lanes project, as well as other projects, including presumably their loosely defined "Sensitive Projects."  (Ex. 1, ¶45; Ex. 2, ¶24; Ex. 3, ¶29;

---

[8] *See also Patterson Dental Supply, Inc. v. Daniel Pace & Henry Schein, Inc.*, No. 19-CV-1940, 2022 WL 18141871, at *7 (D. Minn. July 25, 2022) (finding that exit interviews were not routinely conducted, and even though the employee handbook included a request to return information, that alone was not a sufficient measure to protect confidentiality); *Abrasic 90 Inc. v. Weldcote Metals, Inc.*, 364 F. Supp. 3d 888, 900 (N.D. Ill. 2019) (finding that a failure to conduct exit interviews to request the return of information was a sign that the company did not consider the information valuable); *CMBB LLC v. Lockwood Mfg., Inc.*, 628 F.Supp.2d 881, 885 (N.D. Ill. 2009) (finding plaintiff company's "failure to ensure that [defendant]'s laptop was stripped of [allegedly protected Information] when she left the company goes to show that it did not treat such Information as confidential or a trade secret.").

Ex. 4, ¶20; Ex. 5, ¶30; Ex. 6, ¶18.)  Plaintiffs do not allege that any files that were downloaded onto any of the hard drives contained any such marking.

### E. Plaintiffs' Requested "Obey The Law" Injunction Is Improper

Plaintiffs request that the Court enter an injunction enjoining Defendants from using Plaintiffs' trade secrets, failing to return them, or from destroying evidence.  (Dkt. 10-2.)  But such vague "obey the law" injunctions are improper under Eleventh Circuit law.  *Magazine Publishers' Serv., Inc. v. Nam Mktg. of Fl Gulf Coast, Inc.,* No. 2:11-CV-442, 2011 WL 4902968, at *2 (M.D. Fla. Oct 13, 2011) ("The Eleventh Circuit has repeatedly held that 'obey the law' injunctions are unenforceable.").  For instance, the court in *Fieldturf* denied a preliminary injunction "because the proposed injunction is too vague, and merely reiterates Defendants' existing legal obligations."  *Fieldturf,* 2024 WL 4868292, at *2-3 (noting the impropriety of entering an injunction where: "[o]utside of directing Defendants to follow the law, Plaintiff [did] not specify the conduct that Defendants would be enjoined from participating in").[9]  Likewise in this case, Defendants already are legally obligated to not misappropriate trade secrets and to

---

[9] See also *Am. II Grp., LLC v. Sourceability N. Am., LLC*, No. 8:24-CV-01501, 2025 WL 81343, at *2 (M.D. Fla. Jan. 13, 2025) (finding "the proposed injunction lacks the specificity required by the Eleventh Circuit and Rule 65(d)," as "the proposed injunction's terms amount to an 'obey-the-law' injunction and are otherwise too vague to be effectively enforced by coercive contempt.").

not destroy evidence.  And Messrs. Gonzalez, Rodriguez, Valdes, and Beltran and Ms. Bregel already provided their drives to Plaintiffs' counsel and agreed to provide any additional drives that Plaintiffs' counsel identifies and which are in their possession.  (Ex. 1, ¶42; Ex. 2, ¶¶20-23; Ex. 3, ¶¶25-28; Ex. 4, ¶¶18-19; Ex. 5, ¶¶26-29.)

Moreover, the proposed injunction is improper because it neither identifies nor defines what the trade secrets are.  Each paragraph of the proposed injunction refers to "Plaintiffs' trade secrets," which are never defined and are impermissibly vague. "[T]o obtain a preliminary injunction under the DTSA, 'at a minimum, the subject matter of the trade secret must be described with sufficient particularity to separate it from matters of general knowledge in the trade or of special knowledge of those persons who are skilled in the trade . . ." *Fieldturf*, 2024 WL 4868292, at *2 (citing *Lacayo*, 16 F.4th at 382).

### F. Plaintiffs Cannot Show Harm That Outweighs Potential Harm To Defendants

Plaintiffs argue that an injunction is necessary to prevent "an unfair competitive advantage" (Mot., ¶52-53) but make no showing of any specifics, including for example which alleged trade secrets, what potential use, in which circumstances, or which of the Plaintiffs would be harmed or how.

Plaintiffs also assert that an injunction merely requires Defendants

compliance with "existing trade secret law" (Mot., ¶54), but such an "obey the law" injunction would greatly harm the business and individual reputations of Defendants. *See, e.g., Schl. Specialty, Inc. v. Midwest Direct Equip. & Supply, Inc.*, No. C01-2050, 2002 WL 32172278, at *5-6 (N.D. Iowa Sept. 11, 2002) (finding balance of harms favored the defendants where "[t]he threat of . . . an injunction that simply requires [defendants] to follow the law would damage the defendants' reputation by suggesting that the plaintiff had proved that they were currently engaging in some improper sales practice").[10] Reputational damage is particularly harmful in Acciona's business in which trust plays an important role in the awarding of bids by the government.[11]

Further, Acciona is harmed because Plaintiffs' lax practices to protect its documents is what caused the problem. Whereas Plaintiffs even delayed notifying Acciona for months Acciona took immediate steps to facilitate the files return. *See, e.g., Prudential Ins. Co. of Am. v. Inlay*, 728 F. Supp. 1022, 1031 (N.D. Iowa

---

[10] *Regions Bank v. Raymond James & Assocs., Inc.,* No. 6:20-CV-658, 2020 WL 6870815, at *5 (M.D. Fla. May 15, 2020) ("Indeed, the issuance of a preliminary injunction will impose extreme costs on Defendants—most significantly in the form of reputational injuries. The Court hesitates to brand Defendants with an insinuation of wrongdoing without more definitive evidence to that effect.")

[11] Plaintiffs' cited cases (Mot., ¶54) are inapposite; none balance non-specific allegations of harm (as here), against the potential for Defendants' reputational injury.

2010) ("Another consideration in the balance of harms calculus is whether the defendant has already voluntarily taken remedial action. Where the non-movant has taken such action, the balance of harms is readjusted, because the potential for economic or other harm to the movant has been eliminated.").  The time and expense borne by Acciona and the individuals could have been avoided or minimized had Plaintiffs properly accounted for its documentation.

### G.  Plaintiffs Cannot Show That Injunctive Relief Will Not Disserve Public Interest

For many of the reasons articulated above, granting injunctive relief on these facts will disserve public interest.  Acciona builds roads, bridges, and other construction for public transport which serves the public interest.  Any injunction against a company that only seeks to use its own information and capabilities to work on behalf of the public is *per se* against the public interest.

To the extent any storage devices in the individuals' possession contained any trade secrets (which has not been shown), to the best of Defendants' knowledge the devices have been returned and no copies have been kept.  Acciona was not aware of the individuals' storage devices, had policies in place to protect against the alleged conduct, acted quickly when it was made aware of Plaintiffs' claims, and confirmed it has none of Plaintiffs' alleged files on its systems.  An "obey the law" injunction requested by Plaintiffs, which is entirely vague and

improper as a matter of law, would only cause to disrupt or impede the individuals and Acciona from continuing to design and build public roadways, and would potentially cause prejudicial reputational harm based on unfounded allegations.

### H. Plaintiffs' Verifications In Support Of Their Motion And Amended Complaint Provide No Concrete Evidentiary Basis

The *only* "evidence" Plaintiffs submit in support of their motion are unreliable declarations that are conclusory and lack foundation.

For starters, the statements all summarily conclude that the declarants have "read the allegations of [select] paragraphs . . ." without explaining how they would have firsthand knowledge of the subject matter. These conclusory verifications of generic allegations do "not provide[] the Court with sufficient detail for it to enter an injunction." *FieldTurf*, 2024 WL 4868292, at *3. Rather, they merely specify the declarant's employment title with Plaintiffs and conclude that such titles justify their verification. To enter a preliminary injunction with such tenuous evidentiary support would run afoul of the "high bar [required to] clearly establish[] a substantial likelihood of success on the merits." *J.P. Morgan Sec. LLC v. Liban*, No. 1:23-CV-00798-LMM, 2023 WL 3664820, at *3 (N.D. Ga. Mar. 1, 2023) (citing *Siegel*, 234 F.3d at 1176).

In addition to lacking foundation, the declarations are improperly made only "to the best of [their] knowledge, information, and belief." (Dkts. 9-2, 9-3, 9-4.)

To summarily identify dozens of paragraphs and "swear" that they *might* be correct, without any apparent concrete basis for that belief, is not reliable. *See MDT Pers., LLC v. Camoco, LLC*, 8:10-CV-2445, 2010 WL 5535066, at *4 (S.D. Fla. Dec. 8, 2010) (denying preliminary injunction where plaintiff's evidence declaration was "based upon 'information and belief' rather than his own personal knowledge" and where defendants' declarations were based on personal knowledge).[12] The declarants do not distinguish the allegations for which they allegedly have first-hand knowledge from the ones they are just verifying that they believe might be true. The declarations should be stricken and Plaintiffs' motion should be denied for lacking evidentiary support.

## IV. CONCLUSION

Plaintiffs' narrative of conspiracy and harm is based on false premises and conclusory allegations. For the reasons set forth above, the Court should therefore deny Plaintiffs' Motion for Preliminary Injunction.

---

[12] *See also Oxford Glob. Res., LLC v. Onpoint Healthcare Sols., Inc.*, NO 18-CV-0425, 2018 WL 3207380, at *5 (S.D. Cal. June 28, 2018) (denying preliminary injunction in part because plaintiff's declaration was "made partially on information and belief." (citing 11A CHARLES ALAN WRIGHT, ET AL., FEDERAL PRACTICE AND PROCEDURE § 2949 (3d ed. 2018) ("[W]hen the primary evidence introduced is an affidavit made on information and belief rather than on personal knowledge, it generally is considered insufficient to support a motion for a preliminary injunction.")).

Dated: May 16, 2025

Respectfully submitted,

By:
_/s/ Ryan K. Walsh_
**RYAN K. WALSH** (Ga. Bar No. 735190)
rkwalsh@jonesday.com
**ALEX MCDONALD** (Ga. Bar No. 877484)
alexmcdonald@jonesday.com
JONES DAY
1221 Peachtree Street, N.E., Suite 400
Atlanta, GA 30361
Telephone: 404.581.3939

**MICHAEL A. OBLON** (admitted *pro hac vice*)
maoblon@jonesday.com
JONES DAY
51 Louisiana Avenue, N.W.
Washington, DC 20001.2113
Telephone: +1.202.879.3939
Facsimile: +1.202.626.1700

**MARK E. EARNEST** (admitted *pro hac vice*)
mearnest@jonesday.com
JONES DAY
3161 Michelson Drive, Suite 800
Irvine, California 92612-4408
Telephone: + 1.949.851.3939
Facsimile: + 1.949.553.7539

***Attorneys for Defendant Acciona Construction USA Corp.***

_/s/ Lauren A. Warner_
**LAUREN A. WARNER (**Ga. Bar No. 425769)
lwarner@cglawfirm.com
CHILIVIS, GRUBMAN, WARNER, & BERRY LLP
1834 Independence Square
Atlanta, GA 30338
Telephone: 404.262.6506
***Attorney for Defendant Domingo Rodriguez Torregrosa***

_/s/ Donna V. Smith_
**DONNA V. SMITH (**Ga. Bar No. 723192)
donna@donnavsmith.com
DONNA V. SMITH, PLLC
7901 4th St. N, Suite 19792
St. Petersburg, FL 33702
Telephone: 813.939.7684
***Attorney for Defendant Jesus Gonzalez Fernandez***

_ _/s/ John D. Bennett_____

**JOHN D. BENNETT (**Ga. Bar No.
059212)
JBennett@fmglaw.com
FREEMAN MATHIS & GARY, LLP
100 Galleria Parkway, Suite 1600
Atlanta, GA 30339
Telephone: 678.996.9056
***Attorney for Defendant Michael Valdez***

_ _/s/ Miguel Villarreal, Jr._____

**MIKE VILLARREAL, JR.** (*pro hac
vice* admission to be filed)
mvillarreal@gunn-lee.com
NICK GUINN (*pro hac vice* admission
to be filed)
nguinn@gunn-lee.com
BRANDON COOK
(*pro hac vice* admission to be filed)
bcook@gunn-lee.com
GUNN, LEE & CAVE, P.C.
8023 Vantage Dr., Suite 1500
San Antonio, Texas 78230
Telephone: 210.886.9500

*AND*
_ _/s/ Samuel A. Mullman_____

**SAMUEL A. MULLMAN** (Ga. Bar
No. 456630)
sam@wellbornlaw.com
PAUL F. WELLBORN III (Ga. Bar No.
746720)
pete@wellbornlaw.com
WELLBORN, WALLACE & MULLMAN,
LLC
1218 Menlo Dr. NW, Suite E
Atlanta, GA 30318
Telephone: 404.352.3990

***Attorney for Defendants Jose Luis
Beltran and Maria Bregel Serna***

## CERTIFICATE OF SERVICE

I certify that on May 16, 2025, I electronically filed this DEFENDANTS'
RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY
INJUNCTION through CM/ECF, which will automatically send e-mail notifications
of such filing to all attorneys of record.


Respectfully submitted,

_/s/ Ryan K. Walsh_____
**Ryan K. Walsh (**Ga. Bar No. 735190)
*Defendant Acciona Construction USA Corp.*