# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA

| | |
|---|---|
| FERROVIAL CONSTRUCTION US CORP., NORTH PERIMETER CONTRACTORS, LLC, FERROVIAL CONSTRUCTION EAST, LLC AND ALAMO NEX CONSTRUCTION, LLC, | CIVIL ACTION NO. 1:25-cv-0804-LMM |
| Plaintiffs, | |
| vs. | |
| JESUS GONZALEZ FERNANDEZ, DOMINGO RODRIGUEZ TORREGROSA, MICHAEL VALDES, JOSE LUIS BELTRAN, MARIA BREGEL SERNA, AND ACCIONA CONSTRUCTION USA CORP., | |
| Defendants. | |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT .................................................................... 1

RELEVANT ALLEGATIONS IN THE AMENDED COMPLAINT ................. 4

LEGAL STANDARD .............................................................................. 5

I.  PLAINTIFFS DO NOT SHOW AN ENTITLEMENT TO TRADE
    SECRET PROTECTION ..................................................................... 8

    A.  The Amended Complaint Makes No Mention Of Even Basic
        Protocols That Courts Find Minimally Necessary For Maintaining
        Trade Secrets ............................................................................. 8

    B.  Plaintiffs' Corporate Policies And Computer Passwords Are
        Insufficient Measures To Warrant Trade Secret Protection ................. 11

II. PLAINTIFFS DO NOT IDENTIFY TRADE SECRETS WITH
    SUFFICIENT SPECIFICITY .............................................................. 13

    A.  Nebulous Categories of Information Do Not Adequately Put
        Defendants On Notice Of Plaintiffs' Claim ...................................... 15

    B.  Several Generic Categories Listed In the Amended Complaint Do
        Not Pertain To Trade Secret Information .......................................... 17

    C.  Plaintiffs' Allegations About Filenames Fail To Describe How Any
        Information Contained Therein Are Trade Secrets .............................. 19

III. PLAINTIFFS DO NOT PLAUSIBLY ALLEGE THAT ANY
     INDIVIDUAL IMPROPERLY ACQUIRED OR MISUSED TRADE
     SECRETS ....................................................................................... 20

IV. THE AMENDED COMPLAINT DOES NOT PLAUSIBLY ALLEGE
    THAT ACCIONA HAD ANY KNOWLEDGE OR INVOLVEMENT
    IN ANY PURPORTED MISAPPROPRIATION ...................................... 23

CONCLUSION ..................................................................................... 24

# TABLE OF AUTHORITIES

**Page**

CASES

*A&P Tech., Inc. v. Lariviere,*
No. 1:17-CV-534, 2017 WL 6606961 (S.D. Ohio Dec. 27, 2017) ................. 15

*Abrasic 90 Inc. v. Weldcote Metals, Inc.,*
364 F. Supp. 3d 888 (N.D. Ill. 2019) ........................................................ 10

*Alert Ent., Inc. v. Rana,*
No. 22-CV-06646, 2023 WL 2541353 (N.D. Cal. Mar. 16, 2023) ................ 23

*AlterG, Inc. v. Boost Treadmills LLC,*
388 F. Supp. 3d 1133 (N.D. Cal. 2019) .................................................... 16

*Angel Oak Mortg. Sols. LLC v. Mastronardi,*
593 F. Supp. 3d 1234 (N.D. Ga. 2022) .................................................... 22

*Argos USA LLC v. Young,*
No. 1:18-CV-02797, 2019 WL 4125968 (N.D. Ga. June 28, 2019) ............ 6, 7

*Ashcroft v. Iqbal,*
556 U.S. 662 678–79 (2009) .................................................................... 5

*Balearia Caribbean Ltd., Corp. v. Calvo,*
2019 U.S. Dist. LEXIS 36868 (S.D. Fla. Mar. 6, 2019) .............................. 10

*Be In, Inc. v. Google Inc.,*
No. 12-CV-03373, 2013 WL 5568706 (N.D. Cal. Oct. 9, 2013) ................... 24

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007) ............................................................................. 5, 24

*Blades of Green, Inc. v. Go Green Lawn and Pest, LLC,*
CV 22-00176, 2023 WL 5278654 (D. Md. Aug. 16, 2023) .......................... 18

*C N A Fin. Corp. v. Loc. 743 of Int'l Bhd. Of Teamsters, Chauffeurs, Warehousemen & Helpers of Am.*,
515 F. Supp. 942 (N.D. Ill. 1981) ............................................................... 18

*CMBB LLC v. Lockwood Mfg., Inc.*,
628 F.Supp.2d 881 (N.D. Ill. 2009).......................................................... 11

*Core SWX, LLC v. Vitec Grp. US Holdings, Inc.*,
No. 21-CV-1697, 2022 WL 3588081 (E.D.N.Y. July 14, 2022).................... 9

*Diamond Power Int'l, Inc. v. Davidson*,
540 F. Supp. 2d 1322 (N.D. Ga. 2007) ...................................................... 9

*DM Trans, LLC v. Scott*,
38 F.4th 608 (7th Cir. 2022) .................................................................. 10

*Eddie Kane Steel Prods., Inc. v. Alabama Plate Cutting Co.*,
No. CV 18-15167, 2019 WL 3281623 (D.N.J. July 19, 2019)...................... 24

*El Paso Disposal, LP v. Ncube Labs Co.*,
766 F. Supp. 3d 692 (W.D. Tex. 2025)........................................................ 7

*Elsevier Inc. v. Doctor Evidence, LLC*,
No. 17-CV-5540, 2018 WL 557906 (S.D.N.Y. Jan 23, 2018)............ 16, 17, 19

*eShares, Inc. v. Talton*,
727 F. Supp. 3d 482 (S.D.N.Y. 2024) ...................................................... 22

*Gibson-Homans Co. v. Wall-Tite, Inc.*,
26 U.S.P.Q.2d 1867 (C.D. Cal. 1992) ...................................................... 21

*Heritage Fence Co. v. Malin*,
No. CV 24-2650, 2024 WL 5047468 (E.D. Pa. Dec. 9, 2024)...................... 16

*ImageTrend, Inc. v. Locality Media, Inc.*,
No. 22-CV-0254, 2022 WL 17128009 (D. Minn. Nov 22, 2022) ............ 17, 20

*In re Island Indus., Inc.*,
No. 23-5200, 2024 WL 869858 (6th Cir. Feb. 29, 2024)............................. 12

*Intelliclear, LLC v. ETC Glob. Holdings, Inc.*,
    978 F.3d 653 (9th Cir. 2020) ..................................................... 13

*Kitchens v. PeopleScout, Inc.*,
    No. 1:23-cv-978, 2024 WL 3313361 (N.D. Ga May 24, 2024) ...................... 8

*Krush Commc'ns., LLC v. Lunex Telecom, Inc.*,
    No. 13-CV-3167, 2014 WL 12069847 (N.D. Ga. Sept. 12, 2014) ................... 9

*M.C. Dean, Inc. v. City of Miami Beach, Fla.*,
    199 F. Supp. 3d 1349 (S.D. Fla. 2016) ....................................... 18

*Mason v. Amtrust Fin. Servs., Inc.*,
    848 F. App'x 447 (2d Cir. 2021) ............................................ 9

*MedQuest Ltd. v. Rosa*,
    No. 21-CV-5307, 2023 WL 2575051 (S.D.N.Y. Mar. 20, 2023) ............... 9, 12

*Nat'l Specialty Pharmacy, LLC v. Padhye*,
    734 F.Supp.3d 922 (N.D. Cal. 2024)......................................... 16

*Negative, Inc. v. McNamara*,
    770 F. Supp. 3d 472 (E.D.N.Y. 2025), *appeal filed*, No. 25-876 (2d
    Cir. Apr. 14, 2025) ......................................................... 12

*Opus Fund Servs. (USA) LLC v. Theorem Fund Servs. LLC*,
    No. 17-CV-923, 2018 WL 1156246 (N.D. Ill. Mar. 5, 2018) ...................... 10

*Patterson Dental Supply, Inc. v. Daniel Pace & Henry Schein, Inc.*,
    No. 19-CV-1940, 2022 WL 18141871 (D. Minn. July 25, 2022)................... 10

*Peat, Inc. v. Vanguard Rsch., Inc.*,
    378 F.3d 1154 (11th Cir. 2004) ............................................. 22

*Providence Title Co. v. Truly Title, Inc.*,
    547 F. Supp. 3d 585 (E.D. Tex. 2021)....................................... 18

*Putters v. RMax Operating, LLC*,
    1:13-CV-3382, 2014 WL 1466902 (N.D. Ga. Apr. 15, 2014) ...................... 24

*Superb Motors Inc. v. Deo*,
No. 23-CV-6188, 2025 WL 888464 (E.D.N.Y Mar. 21, 2025)........................9

*TRB Acquisitions LLC v. Yedid*,
No. 20-CV-0552, 2021 WL 293122 (S.D.N.Y. Jan. 28, 2021)............... 16, 20

*Univ. Processing LLC v. Weile Zhuang*,
17-cv-10210-LTS, 2018 WL 4684115 (S.D.N.Y. Sep. 28, 2018) ................. 14

*Vendavo, Inc. v. Price f(x)*,
No. 17-CV-06930, 2018 WL 1456697 (N.D. Cal. March 23, 2018).............. 15

*Versaterm Inc. v. City of Seattle*,
C16-1217, 2016 WL 4793239 (W.D. Wash. Sept. 13, 2016) ....................... 19

*Welter v. Med. Pro. Mut. Ins. Co.*,
No. 22-CV-11047, 2023 WL 2988627 (D. Mass. Feb 23, 2023) .................. 19

*Zurich Am. Life Ins. Co. v. Nagel*,
538 F. Supp. 3d 396 (S.D.N.Y 2021) ........................................................ 15

STATUTES

18 U.S.C. § 1839(3) ......................................................................................6

18 U.S.C. § 1839(3)(A) .................................................................................8

18 U.S.C. § 1839(5) ......................................................................................6

18 U.S.C. § 1839(5)(A) ...............................................................................21

18 U.S.C. § 1839(5)(B)(i) ...........................................................................24

18 U.S.C. § 1839(6) ....................................................................................21

Ga. Code Ann. § 10-1-761(4)(B)....................................................................8

Tex. Civ. Prac. & Rem. Code § 134A.002(6)(A)..............................................8

**OTHER AUTHORITIES**

Federal Rule of Civil Procedure 12(b)(6) ........................................................5

**STATUTES**

18 U.S.C. § 1839(3) .........................................................................................6

18 U.S.C. § 1839(3)(A) .....................................................................................8

18 U.S.C. § 1839(5) .........................................................................................6

18 U.S.C. § 1839(5)(A) ...................................................................................21

18 U.S.C. § 1839(5)(B)(i) ................................................................................24

18 U.S.C. § 1839(6) .......................................................................................21

Ga. Code Ann. § 10-1-761(4)(B) .......................................................................8

Tex. Civ. Prac. & Rem. Code § 134A.002(6)(A) .................................................8

**OTHER AUTHORITIES**

Federal Rule of Civil Procedure 12(b)(6) ........................................................5

# PRELIMINARY STATEMENT

At first glance, the Amended Complaint spins a startling tale about a "coordinated scheme" by five former employees to "steal Plaintiffs' trade secrets" and "expropriate Plaintiffs' playbook." The inflammatory language is unsupported by factual allegations and cannot substitute for properly-pled claims. Defendants take this opportunity to redirect the Court's attention to the core issues at hand.

Plaintiffs and Defendants are in the highway construction business. Pursuant to contracts with state transportation departments, they manage the planning, design, and construction of roadways and interchanges, made of asphalt and concrete. Once a contract is awarded, the bidders' proposed price is published, and the losing bidders' proposed designs are sent to the selected bidder in case the state transportation department wants to incorporate portions of others' submissions into the final designs. Construction moves forward only after the transportation department confirms that the designs comply with long-established engineering requirements for safety, and so they are a matter of public record.[1] The parties are not in the business of research and development or creating products, and their work is not based on trade secrets. And, similar to other construction industries, it is common for employees to change jobs as a major

---

[1] Georgia Department of Transportation documents are public records under the Open Records Act, Ga. Code Ann. § 50-18-70.

highway project is concluding, especially if the new employer has local work, so that the employees can avoid having to relocate to another state.

When taken in context, it is not surprising that Plaintiffs cannot allege facts stating a claim under the Defend Trade Secrets Act and its state law counterparts.

First, the Amended Complaint focuses on external storage devices, but there are no allegations that the individuals were prohibited from using the devices throughout their employment and retaining them upon their departures. Plaintiffs also cannot plausibly allege they were unaware that their employees routinely stored project files along with personal files on external storage devices, nor do they allege that the individuals knew or had reason to know that any files on the devices included purported trade secrets. The Amended Complaint does not identify (i) any nondisclosure agreements with the individuals (there were none), (ii) any specific procedures for maintaining project files (none were implemented, and employees routinely store files on external storage devices), (iii) any markings identifying files as purportedly containing trade secrets (also nonexistent), or even (iv) any exit interview procedures for having employees delete files from their external storage devices prior to their departure (instead, some were asked to keep files for future reference).

Indeed, the individuals still do not know what Plaintiffs purport to be trade secret information on the external storage devices. Merely exclaiming that

numerous files contain information that is "sensitive," "a treasure trove" or "critical" does not make them so. Rather than identifying any trade secrets, the Amended Complaint only musters generic categories of information (such as "pricing," "cost information," "bidding strategy," "designs," and "payroll"), but every company has analogous non-trade secret information. Moreover, the Amended Complaint does not plausibly allege that the individuals misused anything. Plaintiffs identify a few (mainly redacted) filenames for documents on external storage devices, but omit any mention about whether any of those files were opened (they were not) and whether the individuals relinquished their storage devices to cooperate with Plaintiffs' counsel (they did).

Finally, the Amended Complaint pleads no facts substantiating any claim against Acciona Construction USA Corp. ("Acciona"). Plaintiffs do not plausibly allege that Acciona recruited employees to obtain their former employers' documents, asked anyone to bring confidential documents, or knew about any external storage devices prior to receiving a demand letter by Plaintiffs' counsel. The Amended Complaint acknowledges that Acciona responded, but ignores Acciona's representations that it found no project files uploaded from any external storage devices and it instructed all individuals to cooperate with Plaintiffs' counsel and provide any external storage devices they can locate.

## RELEVANT ALLEGATIONS IN THE AMENDED COMPLAINT

In late 2024 and early 2025, a few individuals joined Acciona to work on a new highway construction contract in Atlanta that had been awarded to Acciona. Prior joining Acciona, Messrs. Gonzalez, Rodriguez, and Valdes worked for North Perimeter Contractors, LLC ("NPC") or Ferrovial Construction East, LLC ("FCE") on a highway construction project at the interchange of I-285 and SR400 in Atlanta, but that project was concluding. Amended Complaint ("AC"), ¶¶ 2–3. The companies also submitted a bid to add express lanes to the SR400 highway but in August 2024, that project was awarded to a team that included Acciona. AC, ¶ 45. The Amended Complaint does not address the fact that, given NPC/FCE's business downturn in Atlanta, these individuals understood they would have had to relocate (outside the state or internationally) if they stayed with these companies.

Two other individuals, Mr. Beltran and Ms. Bregel, later joined Acciona after having worked for Alamo NEX Construction ("ANC") in San Antonio. AC, ¶ 12. At ANC, Mr. Beltran and Ms. Bregel worked on a construction project for the I-35 NEX highway in Texas. AC, ¶ 2. The Amended Complaint does not allege how documents about a highway in Texas have any relevance to these individuals' work for Acciona (because they do not).

While at their prior employers, the individuals used external storage devices for their files. The Amended Complaint alleges that the individuals "intentionally

retained" these devices when they left their employment (AC, ¶ 6), but provides sparse information about the files stored thereon. The Amended Complaint notes that the individuals received letters from Plaintiffs' counsel at some point after their departures (AC, ¶ 81), but omits that the individuals agreed to relinquish their external storage devices for Plaintiffs' counsel to perform forensic analysis. Plaintiffs also fail to allege whether any individuals used files or disclosed them.

Plaintiffs first notified Acciona about the external storage devices several months after Messrs. Gonzalez, Rodriguez, and Valdes departed from FEC/NPC, and weeks after Mr. Beltran's and Ms. Bregel's departures from ANC. AC, ¶¶ 48, 66, 81, 86. In response, Acciona diligently investigated the matter and found no indication of any misappropriation.[2]

## LEGAL STANDARD

A complaint should be dismissed when it fails to set forth well-pleaded facts showing that "'the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662 678–79 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Unadorned allegations that suggest the "mere possibility" of wrongdoing are insufficient. *Iqbal*, 556 U.S. at 679. Courts are not required to accept a Plaintiff's allegations when they only amount to "[t]hreadbare recitals of the elements of a cause of

---

[2] Plaintiffs take liberties in characterizing Acciona's response dated April 7, 2025 without attaching it to the Amended Complaint. Such characterizations are grossly inaccurate and should be disregarded.

action, supported by mere conclusory statements[.]" *Id.* at 678. Determining whether a claim is plausible is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

Claims for trade secret misappropriation under the Georgia and Texas Trade Secrets Acts and Federal Defend Trade Secrets Act (DTSA) require proof that "'(1) it had a trade secret and (2) the opposing party misappropriated the trade secret.'" *Argos USA LLC v. Young*, No. 1:18-CV-02797, 2019 WL 4125968 at *5 (N.D. Ga. June 28, 2019) (quoting *Capital Asset Research Corp. v. Finnegan*, 160 F.3d 683, 685 (11th Cir. 1998)). For information to qualify as a "trade secret," (1) the owner must have "taken reasonable measures to keep such information secret," and (2) "the information [must] derive[] independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information." 18 U.S.C. § 1839(3).

To demonstrate an instance of "misappropriation," the trade secret owner must prove "acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means" or "disclosure or use . . . by a person who . . . used improper means to acquire knowledge of the trade secret." 18 U.S.C. § 1839(5). Because Georgia, Texas, and Federal law all require a similar showing, only federal law is discussed herein.

*Argos*, No. 1:18-CV-02797, 2019 WL 4125968 at *5; *El Paso Disposal, LP v. Ncube Labs Co.*, 766 F. Supp. 3d 692, 711 (W.D. Tex. 2025).

## ARGUMENT

Setting aside the vague and baseless assertions in the Amended Complaint about some "coordinated scheme" to "steal," this case is just about five individuals who maintained files on external storage devices while employed with Plaintiffs and, upon being contacted by Plaintiffs' counsel after their departures, cooperated by promptly agreeing to relinquish any devices they could find. These individuals worked in the highway construction business, and there are no plausible allegations that they had nondisclosure agreements or were ever told that any files contained purported trade secret information. The Amended Complaint also does not identify any trade secrets or plausibly allege that the individuals misused any such information, and as for Acciona, there is no allegation that the company was aware of the external storage devices. Misappropriation is an intentional tort. Plaintiffs failed to plead plausible facts that any Defendants acted with improper means.

The allegations in the Amended Complaint are not made plausible by the declarations attached thereto because they are unreliable, conclusory, and lack foundation. Each is improperly made only "to the best of [their] knowledge, information, and belief," obfuscating what purportedly is "known" (and how it is known) and what is just a guess. (Dkts. 9-2, 9-3, 9-4.) To summarily reference

dozens of paragraphs and "swear" they *might* be correct without concrete basis for that belief is not reliable.  *Kitchens v. PeopleScout, Inc.*, No. 1:23-cv-978, 2024 WL 3313361 at *14 (N.D. Ga May 24, 2024) (dismissing trade secret complaint made on information and belief).  The declarations should be stricken.

## I.  PLAINTIFFS DO NOT SHOW AN ENTITLEMENT TO TRADE SECRET PROTECTION

For information to qualify as a "trade secret," Plaintiffs must plausibly allege that they took "reasonable measures to keep such information secret," among other requirements.  18 U.S.C. § 1839(3)(A); *see also* Ga. Code Ann. § 10-1-761(4)(B); Tex. Civ. Prac. & Rem. Code § 134A.002(6)(A).  The Amended Complaint identifies generic policies that are insufficient for protecting trade secrets.  This is unsurprising considering the individuals worked on highway construction projects (and were co-located with contractors in remote, portable offices near the construction site) and were expected to freely share information in close collaboration with contractors and DoT representatives.

### A.  The Amended Complaint Makes No Mention Of Even Basic Protocols That Courts Find Minimally Necessary For Maintaining Trade Secrets

The typical procedures that a plaintiff is expected to perform as part of its "reasonable measures" to protect trade secrets are missing from Plaintiffs' allegations in the Amended Complaint.

Most fundamentally, Plaintiffs do not even allege that any individuals signed

a nondisclosure agreement. *See MedQuest Ltd. v. Rosa*, No. 21-CV-5307, 2023 WL 2575051, at *5 (S.D.N.Y. Mar. 20, 2023) (dismissing complaint for failure to allege that defendants signed a non-disclosure agreement); *Core SWX, LLC v. Vitec Grp. US Holdings, Inc.*, No. 21-CV-1697, 2022 WL 3588081, at *8 (E.D.N.Y. July 14, 2022) (same). This dooms Plaintiffs' argument that they took reasonable measures. *Krush Commc'ns., LLC v. Lunex Telecom, Inc.*, No. 13-CV-3167, 2014 WL 12069847, at *12 (N.D. Ga. Sept. 12, 2014) (finding company failed to take reasonable steps to protect secrecy of its information where persons with access had not agreed, in writing, not to disclose such information to third parties).[3]

Plaintiffs also do not allege that they communicated to the individuals that any of the files at issue contained information Plaintiffs now suddenly purport to be trade secrets. *Diamond Power Int'l, Inc. v. Davidson*, 540 F. Supp. 2d 1322, 1335 (N.D. Ga. 2007) (reasonable measures to protect trade secrets were not found where company (i) had not labeled the file as confidential, (ii) did not direct employees to maintain the secrecy of the file (other than through a general confidentiality agreement which did not expressly mention the file), and (iii) had

---

[3] *See also Superb Motors Inc. v. Deo*, No. 23-CV-6188, 2025 WL 888464, at *23 (E.D.N.Y Mar. 21, 2025) (granting motion to dismiss when trade secrets lost their protectable status due to failure to implement nondisclosure agreements); *Mason v. Amtrust Fin. Servs., Inc.*, 848 F. App'x 447, 451 (2d Cir. 2021) (affirming dismissal where there was no confidentiality agreement in place).

not tracked or otherwise regulated the use of the file); *Opus Fund Servs. (USA) LLC v. Theorem Fund Servs. LLC*, No. 17-CV-923, 2018 WL 1156246, at *5 (N.D. Ill. Mar. 5, 2018) (no reasonable measures found when there was "nothing to differentiate its protective measures for the alleged proprietary trade secrets from those imposed on any other corporate information"). Indeed, there is no allegation that Plaintiffs even marked these files as confidential.

Plaintiffs also have not alleged that they implemented appropriate exit policies to discuss confidentiality, to inquire about files on portable storage devices and to arrange to delete company files. *DM Trans, LLC v. Scott*, 38 F.4th 608, 622 (7th Cir. 2022) (company failed to take reasonable measures to protect trade secrets because it allowed employees to use personal devices to access alleged trade secrets but in exit interviews, it failed to ask to inspect the devices and arrange for them to remove company data); *Balearia Caribbean Ltd., Corp. v. Calvo*, 2019 U.S. Dist. LEXIS 36868, *23–24 (S.D. Fla. Mar. 6, 2019) (under DTSA, plaintiff failed to protect information as trade secrets where departing employee was not asked to delete or return confidential information stored on personal laptop).[4] To be clear, the Amended Complaint does not allege (i) that

---

[4] *See also Patterson Dental Supply, Inc. v. Daniel Pace & Henry Schein, Inc.*, No. 19-CV-1940, 2022 WL 18141871, at *7 (D. Minn. July 25, 2022) (finding that exit interviews were not routinely conducted, and even though the employee handbook included a request to return information, that alone was not a sufficient measure to protect confidentiality); *Abrasic 90 Inc. v. Weldcote Metals,*

Plaintiffs were unaware that the individuals stored files on external storage devices throughout their employment or (ii) that any individual was asked during an exit interview (or at any time prior to their departure) to relinquish the devices, subject them for inspection, or delete files from them. Indeed, for some of the individuals, the Amended Complaint does not even allege that they had any exit interview.

## B. Plaintiffs' Corporate Policies And Computer Passwords Are Insufficient Measures To Warrant Trade Secret Protection

In the absence of any allegations about nondisclosure agreements, procedures regarding storing files, or exit procedures regarding files known to have been stored on external storage devices, the Amended Complaint relies on a few generic company policies that mention confidentiality and the fact that their computer systems were password-protected. AC, ¶ 32–35. Neither makes up for Plaintiffs' lax practices and are not sufficient to constitute reasonable measures.

The generic company policies are not specific, informative, binding, or even relevant. The policies are undated and provide no indication about distribution (which may have occurred only after these individuals departed from the

_____

*Inc.*, 364 F. Supp. 3d 888, 900 (N.D. Ill. 2019) (finding that a failure to conduct exit interviews to request the return of information was a sign that the company did not consider the information valuable); *CMBB LLC v. Lockwood Mfg., Inc.*, 628 F.Supp.2d 881, 885 (N.D. Ill. 2009) (finding plaintiff company's "failure to ensure that [defendant]'s laptop was stripped of [allegedly protected Information] when she left the company goes to show that it did not treat such Information as confidential or a trade secret.").

companies).  There are no plausible allegations the individuals were informed, signed acknowledgements to agree to be bound, or were trained on any such policies.  *See MedQuest*, No. 21-CV-5307, 2023 WL 2575051 at *5 (distributing policy manual with a section on confidential and proprietary information is not sufficient, particularly where the defendants had not specifically acknowledged and agreed to be bound by them); *In re Island Indus., Inc.*, No. 23-5200, 2024 WL 869858, at *5 (6th Cir. Feb. 29, 2024) (affirming dismissal where employees were not trained on policies).  Furthermore, the policies provide no specific instructions applicable to these individuals about what files include trade secret information.  The "Procedure for the Use of Technological Resources," which is not even valid in Georgia, has only a single generic sentence about confidentiality.[5]  The "Competition Policy" pertains to competition law compliance.  (ECF 9-7 at 6.)

As for the passwords, computer log-in acknowledgments do not constitute reasonable measures to protect trade secrets.  *See, e.g., Negative, Inc. v. McNamara*, 770 F. Supp. 3d 472, 480 (E.D.N.Y. 2025), *appeal filed*, No. 25-876 (2d Cir. Apr. 14, 2025) (dismissing case where the plaintiff alleged the reasonable

---

[5] The "Procedure for the Use of Technological Resources" includes a single conclusory sentence asserting that it "serves the purpose of safeguarding the integrity, confidentiality, and availability of Ferrovial's information" without further explanation and without acknowledging that by its terms it does not even apply to employees in Georgia.  (ECF 9-6 at 4.)

measures was a "sign-in with multiple authentication factors," that certain files the defendant accessed were accessible on a need-to-know basis and not accessible, downloadable, or printable by all employees, and employees lose access to the files upon separation of employment). There are no allegations in the Amended Complaint that the individuals received any particularized information when logging-in that would prohibit them from maintaining files on external storage devices or instruct them as to what files may include trade secrets.

## II. PLAINTIFFS DO NOT IDENTIFY TRADE SECRETS WITH SUFFICIENT SPECIFICITY

Referring generally to thousands of documents, as Plaintiffs do here, does not sufficiently identify any singular purported trade secret. *Intelliclear, LLC v. ETC Glob. Holdings, Inc.*, 978 F.3d 653, 658 (9th Cir. 2020) ("It is inadequate for plaintiffs to cite and incorporate by reference hundreds of documents that purportedly reference or reflect the trade secret information.") (internal quotations omitted). During their employment with Plaintiffs, the individuals were not informed that files may have contained trade secret information, and the Amended Complaint continues to keep them in the dark. Again, design files and documentation for highway construction projects are intended to be shown outside the company and, at the least, the information is reasonably ascertainable from what is placed into the public record.

""As a threshold matter, the plaintiff 'must sufficiently identify the

information it claims as a trade secret and allege facts supporting the assertion that the information is indeed protectable as such.'" *IQVIA, Inc. v. Breskin*, No. CV 22-2610, 2023 WL 2588450 at *4 (E.D. Pa. Mar. 20, 2023) (quoting *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 905 (3d Cir. 2021). "At the motion to dismiss stage information alleged to be a misappropriated trade secret must be identified with enough specificity to place a defendant on notice of the bases for the claim being made against it." *Id.* (internal citation omitted). Factors that guide courts in determining whether a complaint sufficiently pleads the existence of a trade secret include (i) the extent to which the information is known outside the business, (ii) the extent to which it is known by employees and others involved in the business, (iii) the extent of measures taken to guard its secrecy, (iv) the value of the information to the business and competitors, (v) the amount of money or effort to develop the information, and (vi) the ease or difficulty with which the information could be properly acquired or duplicated by others. *See, Univ. Processing LLC v. Weile Zhuang*, 17-cv-10210-LTS, 2018 WL 4684115, at *3 (S.D.N.Y. Sep. 28, 2018).

Here, Plaintiffs have only alleged general, non-particularized categories of information that do not provide notice to Defendants and have provided no facts pertinent to the factors that courts rely upon for determining if a trade secret exists.

**A.  Nebulous Categories of Information Do Not Adequately Put Defendants On Notice Of Plaintiffs' Claim**

Plaintiffs make a sweeping claim that "many, if not most, of [the downloaded files] contain and comprise . . . Plaintiffs' trade secrets" (AC, ¶4), yet the Amended Complaint never goes beyond providing conclusory descriptions laid out in "broad, categorical terms." *Vendavo, Inc. v. Price f(x)*, No. 17-CV-06930, 2018 WL 1456697 at *4 (N.D. Cal. March 23, 2018) (granting motion to dismiss). As examples, Plaintiffs characterize the documents as including "[p]laintiff's pricing, bidding strategy, project management and completion strategies, designs, budgets, cost information and summaries, payroll, privileged legal advice, risk analyses, confidential financial statements . . . confidential agreements, and executive presentations." AC, ¶ 63; *see also* at ¶¶ 4, 7, 13–14, 51–53, 64, 74–78, 88–90, 100 (other examples of categorical lists).  Courts routinely dismiss complaints that allege such high-level, categorical descriptions because they "could be applied to almost any corporation in existence, and do not in any way allow Defendants to properly craft a defense around the alleged misappropriation of trade secrets." *A&P Tech., Inc. v. Lariviere*, No. 1:17-CV-534, 2017 WL 6606961 at *10 (S.D. Ohio Dec. 27, 2017); *see also Zurich Am. Life Ins. Co. v. Nagel*, 538 F. Supp. 3d 396, 404 (S.D.N.Y 2021) (granting motion to dismiss where plaintiff claimed "corporate governance documents, board resolutions, …

and financial reports" as protectable trade secrets).[6]

Plaintiffs' claims resemble the misappropriation claims in *IQVIA, Inc. v. Breskin*, where a former employee "downloaded nearly 10,000 files to a two-terabyte hard drive" prior to leaving the company. No. CV 22-2610, 2023 WL 2588450 at *4 (E.D. Pa. Mar. 20, 2023). The plaintiff alleged that:

> the bulk of those . . . files, many of which contain [plaintiff's] trade secrets and other confidential and proprietary business information . . . includes . . . pricing and contract information, client-specific data sets, entire client project plans, program plans, program plans, timelines, step by step plans, technical documentation, and internal financial data[]"

---

[6] *See also AlterG, Inc. v. Boost Treadmills LLC*, 388 F. Supp. 3d 1133, 1145–46 (N.D. Cal. 2019) (granting motion to dismiss where plaintiff "only summarize[d] . . . categories of information" such as "drawings," "know-how", "processes", "software", "engineering", "financial information", "procurement requirements", and "business forecasts"); *Elsevier Inc. v. Doctor Evidence, LLC*, No. 17-CV-5540, 2018 WL 557906 at *6 (S.D.N.Y. Jan 23, 2018) (granting motion to dismiss where plaintiff failed to explain how the "general categories of information" claimed as trade secrets actually function, or why they have value as a result of their secrecy); *Heritage Fence Co. v. Malin*, No. CV 24-2650, 2024 WL 5047468 at *4 (E.D. Pa. Dec. 9, 2024) (granting motion to dismiss where trade secrets were described with "a list of general business terms, such as 'customer agreements; customer service information; intellectual property' and more); *Nat'l Specialty Pharmacy, LLC v. Padhye*, 734 F.Supp.3d 922, 929 (N.D. Cal. 2024) (granting motion to dismiss where trade secret "descriptions [did] not clearly refer to tangible trade secret material as required" and instead listed "'catchall' categories of the *kinds* of trade secrets that might be at issue") (emphasis original); *TRB Acquisitions LLC v. Yedid*, No. 20-CV-0552, 2021 WL 293122 at *2 (S.D.N.Y. Jan. 28, 2021) ("A complaint that only claims general categories of information and data as trade secrets does not state a claim under the DTSA because it does not adequately put the defendant on sufficient notice of the contours of the claim for misappropriation.") (internal citation omitted).

*Id.*, compare with AC, ¶ 96. The court dismissed plaintiff's trade secret claims, holding that "[plaintiff's] descriptions do not distinguish between information claimed to be trade secrets and information simply claimed to be confidential" and that plaintiffs "must still distinguish between these two groups of information." *IQVIA*, 2023 WL 2588450 at *4. Here, Plaintiffs' assertions almost exactly mirror those made by the plaintiff in *IQVIA*. AC, ¶ 4. Plaintiffs categorical descriptions of the purportedly misappropriated documents fail to demonstrate that any of this allegedly sensitive information "is truly [a] trade secret—a standard far greater than the standard for confidentiality of business information." *Elsevier*, 2018 WL 557906 at *5; *see also ImageTrend, Inc. v. Locality Media, Inc.*, No. 22-CV-0254, 2022 WL 17128009 at *3 (D. Minn. Nov 22, 2022) ("Although the amended complaint includes numerous references to broad categories of allegedly 'highly sensitive confidential information' or 'proprietary' information, such generalized references—without more—are insufficient to plausibly allege that these categories of information are 'trade secrets.'").

**B.    Several Generic Categories Listed In the Amended Complaint Do Not Pertain To Trade Secret Information**

Some types of information may be private but that does not make them trade secrets. For example, Plaintiffs allege that Mr. Valdes had downloaded information "relating to Plaintiffs' employees, human resource plans, and wage data" as well as "staffing plans," "various trainings," and a file titled "Grand

Employee Lists." AC, ¶¶ 9, 69. Wage information and the names of employees working for Defendants "[are] clearly known to the employee[s] in question, who [are] free to share it at will." *Blades of Green, Inc. v. Go Green Lawn and Pest, LLC*, CV 22-00176, 2023 WL 5278654 at *3 (D. Md. Aug. 16, 2023) (granting motion to dismiss); *see also C N A Fin. Corp. v. Loc. 743 of Int'l Bhd. Of Teamsters, Chauffeurs, Warehousemen & Helpers of Am.*, 515 F. Supp. 942, 946 (N.D. Ill. 1981) (granting motion to dismiss because a list of "employees' names, their home addresses, and other confidential information" was not a trade secret). Similarly, "employee salary and office revenue data at issue constitute the types of generic business data kept by companies that, while often considered confidential, do not provide any independent economic value that is derived from being kept secret." *Providence Title Co. v. Truly Title, Inc.*, 547 F. Supp. 3d 585, 610 (E.D. Tex. 2021); s*ee also Blades of Green*, 2023 WL 5278654 at *3 ("There is no assertion that [plaintiff] spent any money to compile . . . its employee pay records . . . which [are] simply generated in the course of doing business.").

Plaintiffs' allegations regarding "designs," "costs," etc. also fail because no specifics are provided. These may pertain, for example, to public roadway information that is available from the government entity that owns the intellectual property. *See M.C. Dean, Inc. v. City of Miami Beach, Fla.*, 199 F. Supp. 3d 1349, 1356–57 (S.D. Fla. 2016) (holding information furnished pursuant to a public

contract is not a trade secret because data provided by public contractors may be the "property of [the government] and may be used by [the government] without restriction."); *Versaterm Inc. v. City of Seattle*, C16-1217, 2016 WL 4793239 at *4 (W.D. Wash. Sept. 13, 2016) (observing that defendant had no "affirmative obligation...to not disclose public records that may contain . . . trade secrets"). Public information cannot form the basis of a trade secret claim.

### C. Plaintiffs' Allegations About Filenames Fail To Describe How Any Information Contained Therein Are Trade Secrets

The Amended Complaint points to a handful of documents by identifying redacted file names and makes cursory assertions that these documents are "related to bids where Acciona will compete." AC, ¶ 63. Identifying documents, as opposed to specific information in the documents, does not specify trade secrets. *See Welter v. Med. Pro. Mut. Ins. Co.*, No. 22-CV-11047, 2023 WL 2988627 at *15 (D. Mass. Feb 23, 2023) ("[C]ourts have rejected efforts to elevate isolated items of information to the status of 'trade secrets.'"); *Elsevier*, 2018 WL 557906 at *3 ("[Trade secrets are] not simply information as to a single or ephemeral events in the conduct of the business . . . [they] are a process or device for continuous use in the operation of the business . . . [a] unified process . . . [that] affords competitive advantage"). Plaintiffs do not specify what information within these documents purportedly offers a competitive advantage by being kept secret.

Identifying redacted file names, such as "[Sensitive Project No.

1]Longitudinal Study Meeting notes 20241001", "2024.09.02 [Sensitive Project No. 1] Stick_Diagram_v6.1.xlsx", Cintra [Sensitive Project No. 2] Cost Scenarios.docx" provides no indication as to what, if any, *protectable* information is contained within. AC, ¶ 64; *see TRB Acquisitions*, 2021 WL 293122 at *2 (granting motion to dismiss where plaintiff did not "offer any particulars of how its strategies and plans function or any other basis for the Court to discern exactly what information it alleges [was] misappropriated, let alone whether that information is protectable"); *ImageTrend*, 2022 WL 17128009 at *3 (granting motion to dismiss where "the amended complaint [made] no effect to describe what plans, projects, or clients these documents pertain to or allege any facts that could demonstrate how this information satisfies the statutory definition of 'trade secret'); *IQVIA*, 2023 WL 2588450 at *4 (holding a description that documents "included client-specific information that [Plaintiff] used on client projects" was a "threadbare description" that left the court unable to "assess if a trade secret exist[ed]"). In short, Plaintiffs have failed to describe what protected information is actually contained within their files and Defendants have no notice as to what, if any, trade secrets are at issue as a result.

## III. PLAINTIFFS DO NOT PLAUSIBLY ALLEGE THAT ANY INDIVIDUAL IMPROPERLY ACQUIRED OR MISUSED TRADE SECRETS

Even if it were found that Plaintiffs sufficiently alleged reasonable measures

were taken to protect trade secrets and identified a trade secret with sufficient specificity, the Amended Complaint fails to plausibly allege that the individual defendants improperly acquired, disclosed, or used trade secret information.

Downloading files onto an external storage device and retaining the device is not an improper acquisition of a trade secret.[7] Under the DTSA, GTSA, and TTSA, "acquisition" of another's trade secret must be "by a person *who knows or has reason to know* that the trade secret was acquired *by improper means*." 18 U.S.C. § 1839(5)(A). "Improper means" is defined as being an intentional wrongdoing. *See* 18 U.S.C. § 1839(6). Plaintiffs do not (and cannot) plausibly allege that they had prohibited any of the individuals from downloading files onto external storage devices while they were employed by Plaintiffs. Nor does the Amended Complaint plausibly allege that Plaintiffs were unaware that the individuals had external storage devices or that they prohibited the individuals from retaining those devices as they were departing from Plaintiffs' employment. Indeed, there is no indication that any individual was asked to return devices or delete files on the devices until after they already left the companies. The Amended Complaint also does not disclose that any of the individuals knew or had

---

[7] *See, e.g., Gibson-Homans Co. v. Wall-Tite, Inc.*, 26 U.S.P.Q.2d 1867, 1871 (C.D. Cal. 1992) (employee's mere possession of notebook containing former employer's trade secrets not a "threat" of misappropriation).

reason to know that the files on the external storage devices contained information that Plaintiffs now purport to be their trade secret. Under such circumstances, there are no facts pled that indicate that the individuals engaged in intentional wrongdoing. *Angel Oak Mortg. Sols. LLC v. Mastronardi*, 593 F. Supp. 3d 1234, 1244 (N.D. Ga. 2022) (dismissing DTSA claim against a defendant employee finding he did not "acquire" information from his former employer by "improper means" when he sent business information to his personal email during his employment with the plaintiff); *eShares, Inc. v. Talton*, 727 F. Supp. 3d 482, 493 (S.D.N.Y. 2024) (knowledge component is not satisfied when employer did not specifically prohibit employee from downloading files).

The Amended Complaint also does not plausibly allege that any of the individuals disclosed any trade secret information to others or used trade secret information. Plaintiffs have "the burden of establishing each of these statutory elements as to each claimed trade secret." *Peat, Inc. v. Vanguard Rsch., Inc.*, 378 F.3d 1154, 1158 (11th Cir. 2004). Because the Amended Complaint does not specifically identify any trade secret information, it does not plausibly allege that any individual disclosed or used it.[8] Moreover, even if there were any use,

---

[8] The Amended Complaint alleges that Mr. Rodriguez "implicitly admitted that he plugged at least one external storage device … into an Acciona computer." AC, ¶ 8. No facts are pled about this purported admission, but nonetheless, plugging an external storage device (which may include personal files) into a

Plaintiffs do not plausibly allege that the individual would have known that the information at issue was a trade secret, and so no liability would attach.

## IV. THE AMENDED COMPLAINT DOES NOT PLAUSIBLY ALLEGE THAT ACCIONA HAD ANY KNOWLEDGE OR INVOLVEMENT IN ANY PURPORTED MISAPPROPRIATION

Plaintiffs make only conclusory and speculative accusations against Acciona that cannot support a claim under the DTSA, GUTSA, or TUTSA. There are no plausible allegations that Acciona disclosed or used any files from any external storage devices, or that Acciona even knew or had reason to know of these devices.

As a first matter, Plaintiffs do not plausibly allege that any individuals acted as Acciona's agent by downloading files during their employment with Plaintiffs. *Alert Ent., Inc. v. Rana*, No. 22-CV-06646, 2023 WL 2541353, at *3–4 (N.D. Cal. Mar. 16, 2023) (dismissing action against new employer where hiree had downloaded thousands of files from prior employer onto personal drive). Plaintiffs accuse Acciona of engaging in a "scheme" without facts to back this up.[9]

Second, there are no plausible allegations that Acciona knew that any individual had any purported trade secret information. Misappropriation is an intentional tort that requires actual or constructive knowledge that one's conduct

---

computer is not an instance of "disclosure" or "use" of a trade secret information.

[9] It does not follow that Acciona engaged in some scheme, just because Plaintiffs had learned that some individuals met with Acciona prior to tendering their resignations. *See, e.g,* AC, ¶ 48.

flows from improper means. *See, e.g.,* 18 U.S.C. §1839(5)(B)(i); *Eddie Kane Steel Prods., Inc. v. Alabama Plate Cutting Co.*, No. CV 18-15167, 2019 WL 3281623, at *7 (D.N.J. July 19, 2019); *Be In, Inc. v. Google Inc.,* No. 12-CV-03373, 2013 WL 5568706 at *3–4 (N.D. Cal. Oct. 9, 2013). Acciona could not misappropriate if it did not know, or have reason to know, of the external storage devices. *Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678 (facial plausibility require facts that add up to "more than a sheer possibility.").

Plaintiffs do not plausibly allege that Acciona used any trade secret information, knowingly or otherwise. The individuals' passive, inadvertent possession of files on an external storage device are not grounds for trade secret liability against Acciona, just because it is their new employer. *Putters v. RMax Operating, LLC*, 1:13-CV-3382, 2014 WL 1466902, at *3 (N.D. Ga. Apr. 15, 2014) (finding no trade secret violation where trade secrets were undisputedly acquired lawfully through employment, and thus not through improper means, and there were no specific allegations of misuse by defendant).

## <u>CONCLUSION</u>

For the foregoing reasons, this Court should dismiss this suit against Defendants for failure to state a claim upon which relief can be granted.

Dated:　　　June 24, 2025

By:
/s/ Michael A. Oblon
**MICHAEL A. OBLON**
(admitted *pro hac vice*)
maoblon@jonesday.com
JONES DAY
51 Louisiana Avenue, N.W.
Washington, DC  20001.2113
Telephone:　　　+1.202.879.3939
Facsimile:　　　+1.202.626.1700

**RYAN K. WALSH**
(Ga. Bar No. 735190)
rkwalsh@jonesday.com
**ALEX MCDONALD**
(Ga. Bar No. 877484)
alexmcdonald@jonesday.com
JONES DAY
1221 Peachtree Street, N.E., Suite 400
Atlanta, GA 30361
Telephone: 404.581.3939

**MARK E. EARNEST**
(admitted *pro hac vice*)
mearnest@jonesday.com
JONES DAY
3161 Michelson Drive, Suite 800
Irvine, California 92612-4408
Telephone:　　　+ 1.949.851.3939
Facsimile:　　　+ 1.949.553.7539

***Attorneys for Defendant Acciona
Construction USA Corp.***

Respectfully submitted,

/s/ Lauren A. Warner
**LAUREN A. WARNER**
(Ga. Bar No. 425769)
lwarner@cglawfirm.com
CHILIVIS, GRUBMAN, WARNER, &
BERRY LLP
1834 Independence Square
Atlanta, GA 30338
Telephone: 404.262.6506

***Attorney for Defendant Domingo
Rodriguez Torregrosa***

/s/ Donna V. Smith
**DONNA V. SMITH**
(Ga. Bar No. 723192)
donna@donnavsmith.com
DONNA V. SMITH, PLLC
7901 4th St. N, Suite 19792
St. Petersburg, FL 33702
Telephone: 813.939.7684

***Attorney for Defendant Jesus
Gonzalez Fernandez***

*/s/ John D. Bennett*
**JOHN D. BENNETT (**Ga. Bar No. 059212)
JBennett@fmglaw.com
FREEMAN MATHIS & GARY, LLP
100 Galleria Parkway, Suite 1600
Atlanta, GA 30339
Telephone: 678.996.9056

***Attorney for Defendant Michael Valdez***

*/s/ Miguel Villarreal, Jr.*
**MIKE VILLARREAL, JR.** (admitted *pro hac vice*)
mvillarreal@gunn-lee.com
**NICK GUINN** (admitted *pro hac vice*)
nguinn@gunn-lee.com
**BRANDON COOK** (admitted *pro hac vice*)
bcook@gunn-lee.com
GUNN, LEE & CAVE, P.C.
8023 Vantage Dr., Suite 1500
San Antonio, Texas 78230
Telephone: 210.886.9500

*AND*

*/s/ Samuel A. Mullman*
**SAMUEL A. MULLMAN** (Ga. Bar No. 456630)
sam@wellbornlaw.com
**PAUL F. WELLBORN III** (Ga. Bar No. 746720)
pete@wellbornlaw.com
WELLBORN, WALLACE & MULLMAN, LLC
1218 Menlo Dr. NW, Suite E
Atlanta, GA 30318
Telephone: 404.352.3990

***Attorneys for Defendants Jose Luis Beltran and Maria Bregel Serna***

# CERTIFICATE OF SERVICE

I certify that on June 24, 2025, I electronically filed this brief in support of defendants' motion to dismiss for failure to state a claim through CM/ECF, which will automatically send e-mail notifications of such filing to all attorneys of record.


Respectfully submitted,


_/s/ Michael A. Oblon_____

**MICHAEL A. OBLON**
(admitted *pro hac vice*)

***Attorney for Defendant Acciona Construction USA Corp.***

# CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 5.1

In accordance with Local Rule 7.1(D), I certify that this brief has been prepared with Times New Roman, 14 point font, as approved of by the Court in Local Rule 5.1.

Respectfully submitted,

 /s/ Michael A. Oblon_____
**MICHAEL A. OBLON**
(admitted *pro hac vice*)

***Attorney for Defendant Acciona Construction USA Corp.***