IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| FERROVIAL CONSTRUCTION US CORP., et al., | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. |
| | : | 1:25-cv-00804-LMM |
| | : | |
| JESUS GONZALEZ FERNANDEZ, et al., | : | |
| | : | |
| | : | |
| Defendants. | : | |

## ORDER

This case comes before the Court on Defendants' Motion to Dismiss [69].

After due consideration, the Court enters the following Order.

## I.    BACKGROUND[1]

This case involves allegations that Plaintiffs' former employees joined—and

provided trade secrets to—Plaintiffs' competitor. Dkt. No. [9]. Plaintiffs are part

of the same corporate family of businesses ("Ferrovial") that design and develop

large-scale transportation infrastructure projects. Id. ¶ 2.

The individual Defendants worked in various roles for Ferrovial before

joining Defendant Acciona Construction USA Corp. ("Acciona"). Id. ¶¶ 3–12.

Defendant Gonzalez worked for Ferrovial as a Project Design Manager,

---

[1] All facts are construed in the light most favorable to Plaintiffs as the nonmoving party.

overseeing management and design services for projects. Id. ¶ 3. Defendant Rodriguez worked for Ferrovial as the Managing Director of a construction division that encompassed Georgia, North Carolina, Tennessee, and Florida. Id. ¶ 7. Defendant Valdes worked for Ferrovial as a Human Resources Manager. Id. ¶ 9. And Defendants Bregel and Bertran were also long-time employees within Ferrovial's corporate family before joining Acciona. Id. ¶ 12.

A substantial part of Ferrovial's competitive position rests in their confidential business information, which it seeks to keep out of competitors' hands. Id. ¶ 31. Thus, Ferrovial requires employees to agree to various policies and procedures to protect the information's confidentiality, such as agreeing to a "Corporate Code of Ethics." Id. ¶ 32. This code states: "Ferrovial's proprietary and confidential information is one of its greatest assets," which includes "[t]echnical information, designs, process data, pricing information, strategic plans, know-how, software and technology." Id. Further, the code states that employees "should never use Ferrovial's confidential information—or that of third parties—outside the scope of the professional context in which it was originally obtained" and that "Ferrovial's property should never be used for offensive or illegal purposes, conducting personal or other business, or to further the activities of a competitor." Id. Employees are also bound by the "Procedure for the Use of Technological Resources," which requires "safeguarding the integrity, confidentiality, and availability of Ferrovial's information. Id. ¶ 33.

2

Additionally, Ferrovial's "Competition Policy" specifically prohibits exchanging confidential business information with competitors. Id.

Each of the individual Defendants were bound by these policies during their employment. Id. ¶ 34. Further, the individual Defendants, upon logging into their computers, were required to acknowledge and agree that their access was granted for the limited purposes of performing work for Ferrovial and subject to compliance with the "Procedure for the Use of Technological Resources." Id. ¶ 33. And Ferrovial protects its confidential information on password-protected internal computer servers that can only be accessed by select employees who have a valid reason to review or use the information. Id. ¶ 35.

Plaintiffs allege that, in the days and weeks before each of the individual Defendants left Ferrovial and joined Acciona, they took trade secrets and are threatening to use those secrets to benefit themselves and Acciona. Id. ¶ 99. Specifically, Defendant Gonzalez downloaded over 100,000 documents from Ferrovial's password-protected network, which included: "engineering drawings, construction strategies, design management plans, bids and bidding strategies, project risk summaries, and pricing information." Id. ¶ 4. Defendant Rodriguez used external storage devices to transfer over 800 files of commercially sensitive information, including "information about [Ferrovial's] pricing, bidding strategy, project management and completion strategies, designs, budgets, cost information and summaries, payroll, privileged legal advice, risk analyses, confidential financial statements . . . , confidential agreements, and executive

presentations." Id. ¶ 63. And Plaintiffs identified specific project bids that this information was related to and that Acciona was in competition with. See id. ¶¶ 43, 52, 63.

Additionally, Defendant Valdes used external storage devices to collect sensitive information relating to Ferrovial's employees, human resource plans, and wage data. Id. ¶ 9. This included the "Grand Employee Lists," which is a "master employee roster which contains personal confidential information on an employee including social security numbers, date of birth, ethnicity, salary and home address, and . . . is never allowed to be removed from Ferrovial's computing network." Id. ¶ 70. Defendant Bregel used an external storage device to transfer "work-related emails that included information and attachments relating to subcontractors' monthly closures, project budgets, and employee wage information," as well as "project layouts and designs." Id. ¶ 74. Finally, Defendant Beltran used the same external storage device to transfer a Construction and Design Contact List for a project as well as "videos, various purchase contracts, design and drawing files, project-related files . . . , technical submissions, subcontractor quotes, and tender phase documents." Id. ¶ 77.

Ferrovial further alleges that the individual Defendants acted in concert to benefit each other as well as Ferrovial's competitor, Defendant Acciona. Id. ¶¶ 1, 8, 11, 13, 101. Specifically, Ferrovial alleges that the wrongful conduct was "taken at the direction of, or with the tacit approval of Acciona and for Acciona's benefit." Id. ¶ 101. This includes expropriation of Ferrovial's "playbook" and

poaching Plaintiffs' employees via use of their master employee list. Id. ¶¶ 13, 70–71, 91, 101. Further, the external storage devices containing this information were plugged into the individual Defendants' Acciona computers, and the information directly correlated to providing Acciona with an advantage in bidding and competing against Plaintiffs for the same jobs. Id. ¶¶ 85, 87, 91–92. Plaintiffs sued Defendants, seeking damages and injunctive relief for violation of the federal Defend Trade Secrets Act (DTSA) (Count 1); the Georgia Trade Secrets Act (Count 2); and the Texas Uniform Trade Secrets Act (Count 3). Id. ¶¶ 94–116. Plaintiffs also seek punitive damages and attorney's fees from Defendants. Id. Defendants now move to dismiss this case. Dkt. No. [69].

## II.    LEGAL STANDARD

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While this pleading standard does not require "detailed factual allegations," the Supreme Court has held that "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

To withstand a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570). A complaint is plausible on its face when the plaintiff pleads factual content necessary for the

court to draw the reasonable inference that the defendant is liable for the conduct alleged. Id. (citing Twombly, 550 U.S. at 556).

At the motion to dismiss stage, "'all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff.'" FindWhat Inv'r Grp. v. FindWhat.com, 658 F.3d 1282, 1296 (11th Cir. 2011) (quoting Garfield v. NDC Health Corp., 466 F.3d 1255, 1261 (11th Cir. 2006)). However, this principle does not apply to legal conclusions set forth in the complaint. Iqbal, 556 U.S. at 678.

## III. DISCUSSION

Defendants argue that Plaintiffs' Amended Complaint fails to state a claim for trade secret misappropriation under Georgia, Texas, and Federal law. Dkt. No. [69-1].[2] "To assert a claim of misappropriation of a trade secret claim under federal law . . . a plaintiff must allege that '(1) it had a trade secret and (2) the opposing party misappropriated the trade secret.'" Regalado v. Atrium Health, No. 24-10228, 2024 WL 3813955, at *4 (11th Cir. Aug. 14, 2024) (quoting Penalty Kick Mgmt. Ltd. v. Coca Cola Co., 318 F.3d 1284, 1290–91 (11th Cir. 2003)) (citation modified). Further, Plaintiffs have the burden to establish that they have taken "reasonable measures" to keep the information secret. Id. (citing 18 U.S.C. § 1839(3)). Here, Defendants argue that Ferrovial: (A) has not shown that it took

---

[2] Defendants argue that Georgia, Texas, and federal law all contain similar requirements for a trade secrets misappropriation claim, so Defendants' Motion primarily discusses federal law. Dkt. No. [69-1] at 13. Thus, the Court's discussion is likewise primarily focused on federal law.

reasonable measures to keep information secret; (B) does not identify trade secrets with sufficient specificity; (C) has not plausibly alleged any that any individual improperly acquired or misused trade secrets; and (D) does not plausibly allege that Defendant Acciona had any knowledge or involvement. Dkt. No. [69-1]. Plaintiffs respond that the Amended Complaint states a plausible claim for trade secret misappropriation against all Defendants. Dkt. No. [74]. The Court will discuss each argument in turn.

### A. Reasonable Measures

First, Defendants argue that Plaintiffs have not shown that they took reasonable measures to keep the information secret. Dkt. No. [69-1] at 15–20. Specifically, Defendants assert that Plaintiffs do not allege that they followed basic protocols that courts find necessary to establish reasonable measures—such as requiring employees to sign non-disclosure agreements, communicating that the relevant files contained trade secrets, or conducting exit interviews. Id. at 16–18. And Defendants further note that the measures Plaintiffs alleged to have taken—such as requiring employees to be bound by certain policies and having password-protected computer systems—are insufficient. Id. at 18–20. Plaintiffs respond that the measures that they pled are sufficient to survive dismissal. Dkt. No. [74] at 14–24.

The Court agrees with Plaintiffs. As a preliminary matter, Defendants have provided no binding authority to support the proposition that certain protocols are required to establish "reasonable measures," and the Court finds none,

7

particularly at this stage of the proceeding. See Dkt. No. [69-1] at 15–18; see also Warehouse Sols., Inc. v. Integrated Logistics, LLC, 610 F. App'x 881, 885 (11th Cir. 2015) (stating that "the absence of a written non-disclosure agreement is relevant" but "not dispositive" to determining whether the plaintiff took reasonable measures to preserve the information's secrecy). Instead, whether a plaintiff took reasonable measures to keep information secret generally "presents a question for the trier of fact." Camp Creek Hosp. Inns, Inc. v. Sheraton Franchise Corp., 139 F.3d 1396, 1411 (11th Cir. 1998). And "the reasonableness of a plaintiff's efforts to maintain secrecy depends on the particular circumstances of each case." WWMAP, LLC v. Birth Your Way Midwifery, 711 F. Supp. 3d 1313, 1321 (N.D. Fla. 2024).

Here, Plaintiffs point to multiple policies and procedures that the individual Defendants were bound by, including the "Corporate Code of Ethics," the "Procedure for the Use of Technological Resources," and the "Competition Policy," which each impose confidentiality obligations. Dkt. No. [9] ¶¶ 32–34. These codes prohibit use of confidential information, including "[t]echnical information, designs, process data, pricing information, strategic plans, know-how, software and technology," beyond "the scope of the professional context in which it was originally obtained." Id. ¶ 32. And the codes specifically prohibit the use of Ferrovial's property "to further the activities of a competitor." Id. Further, upon logging into their computers, the individual Defendants "were required to acknowledge and agree that their access was granted for the limited purposes of

performing work for Ferrovial and subject to compliance with the Procedure for the Use of Technological Resources." Id. ¶ 33. And Ferrovial protects its "confidential information on password-protected internal computer servers that can only be accessed by select employees who have a valid reason to review or use the information." Id. ¶ 35. Thus, the Court finds that, when viewing the allegations in the light most favorable to Plaintiffs, the Amended Complaint alleges measures that could be considered reasonable. Therefore, dismissal at this stage of the proceedings is not appropriate on these grounds.

## B. Identification of Trade Secrets

Second, Defendants assert that Plaintiffs do not identify trade secrets with sufficient specificity. Dkt. No. [69-1] at 20–27. Specifically, Defendants argue that non-particularized categories of information do not give sufficient notice, that several categories in the Amended Complaint do not pertain to trade secret information, and that references to file names do not describe how they contain trade secrets. Id. Plaintiffs respond, arguing that Defendants ask for a heightened pleading standard and that the Amended Complaint reasonably identifies trade secrets. Dkt. No. [74] at 24–32.

The Court disagrees with Defendants. Again, Defendants have provided no binding authority to support their position regarding the inadequacy of Plaintiffs' pleading as a matter of law. See Dkt. No. [69-1] at 20–27. At the motion to dismiss stage, Plaintiffs "need only allege sufficient facts to plausibly show a trade secret was involved and to give [Defendants] notice of the material [they claim]

constituted a trade secret." <u>DynCorp Int'l v. AAR Airlift Grp., Inc.</u>, 664 F. App'x 844, 848 (11th Cir. 2016) (citing <u>Twombly</u>, 550 U.S. at 555–56). Under the DTSA, a "trade secret" includes "all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes . . . ." 18 U.S.C. § 1839(3). This information must "derive independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information." <u>Id.</u> (citation modified).

Here, Plaintiffs identify information that includes engineering drawings, construction strategies, design management plans, bids and bidding strategies, project risk summaries, pricing information, project budgets, subcontractors' monthly closures, and project layouts and designs." <u>Id.</u> ¶¶ 4, 9, 63, 74, 77. And Plaintiffs identified a specific project bid that some of this information was related to and that Acciona also submitted a bid for. <u>See id.</u> ¶¶ 43, 52, 63. Thus, the Court finds that Plaintiffs "allege sufficient facts to plausibly show a trade secret was involved and to give [Defendants] notice of the material [they claim] constituted a trade secret." <u>DynCorp Int'l</u>, 664 F. App'x at 848. Because the Court

finds that Plaintiffs' pleadings are sufficient, it need not address Defendants' arguments regarding file names.

However, Defendants also take issue with two specific categories of information, arguing (1) that Plaintiffs' allegations regarding designs and costs are not specific enough and (2) that the information that Plaintiffs alleges that Defendant Valdes misappropriated is not a trade secret. Dkt. No. [69-1] at 24–26. Regarding costs and designs, the crux of Defendants' arguments appears to be that this information could be publicly available. Id. at 25 (explaining that this information could "pertain, for example, to public roadway information that is available from the government entity that owns the intellectual property"). Nevertheless, the Eleventh Circuit has stated "[e]ven if all of the information is publicly available, a unique compilation of that information, which adds value to the information, also may qualify as a trade secret." Cap Asset Rsch. Corp. v. Finnegan, 160 F.3d 683, 686 (11th Cir. 1998). Thus, the Court finds that dismissal is not appropriate given (a) the breadth of information that Plaintiffs alleged was misappropriated and (b) the connection between that information and Ferrovial's competitive position in securing specific projects.

Additionally, Defendants argue that the information that Plaintiffs allege that Defendant Valdes misappropriated, "relating to Plaintiffs' employees, human resource plans, and wage data" as well as "staffing plans," "various trainings," and a file titled "Grand Employee Lists," is not a trade secret. Dkt. No. [69-1] at 24–25 (quoting Dkt. No. [9] ¶¶ 9, 69). However, Defendants have provided no

binding authority that such information, as a matter of law, cannot be considered a trade secret. See id. And some courts in the Eleventh Circuit have noted that "employee lists are generally deemed trade secrets unless the facts indicate that such information is easily accessible from outside sources." Humanitary Med. Ctr., Inc. v. Artica, No. 8:23-CV-1792-WJF-TGW, 2023 WL 8779956, *3 (M.D. Fla. Dec. 19, 2023) (citing Quality Labor Mgmt., LLC v. Galvan, No. 6:21-cv-588-PGB-DAB, 2021 WL 4935745, at *2 (M.D. Fla. July 12, 2021). Here, Plaintiffs specify that Defendant Valdes misappropriated the "Grand Employee Lists" which is a "master employee roster which contains personal confidential information on an employee including social security numbers, date of birth, ethnicity, salary and home address, and . . . is never allowed to be removed from Ferrovial's computing network." Dkt. No. [9] ¶ 70. Thus, given the breadth of information included in this employee list and that it does not appear to be easily accessible from outside sources, the Court finds these allegations to be sufficient to survive dismissal.

## C. Misappropriation

Third, Defendants argue that Plaintiffs fail to plausibly allege that the individual Defendants improperly acquired, disclosed, or used trade secrets. Dkt. No. [69-1] at 27–30. Specifically, Defendants assert that: (1) downloading files onto an external storage device and retaining the device is not an improper acquisition of a trade secret, (2) the Amended Complaint does not plausibly allege that any of the individuals disclosed trade secret information to others or

used it for their own benefit, and (3) even if there was any use, there are no plausible allegations that the individuals would have known that the relevant information was a trade secret. Id. Plaintiffs respond that the Amended Complaint alleges that the individuals were obligated to maintain the confidentiality of their trade secrets and that the individuals nonetheless acquired, used, or disclosed those secrets. Dkt. No. [74] at 33–38.

The Court agrees with Plaintiffs. While the Court has already found that Plaintiffs have identified alleged trade secrets, they must also show that Defendants "misappropriated the trade secret." Penalty Kick Mgmt. Ltd., 318 F.3d at 1290–91 (citation modified). Under the DTSA, "misappropriation" can occur either through (a) "acquisition" or (b) "disclosure or use." 18 U.S.C.. § 1839(5). First, "misappropriation" can be established by showing "acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means." Id. § 1839(5)(A). And, despite Defendants' contentions, "improper means" includes "breach or inducement of a breach of a duty to maintain secrecy." Id. § 1839(6)(A). Additionally, "misappropriation" can also be established through "disclosure or use of a trade secret of another . . . by a person who used improper means to acquire knowledge of the trade secret" or knew that the information was "acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secret . . . ." Id. § 1839(5)(B) (citation modified). Determining misappropriation of a trade secret is a question of fact, whether through "acquisition" or "disclosure or use."

13

Diamond Power Int'l, Inc. v. Davidson, 540 F. Supp. 2d 1322, 1338–39 (N.D. Ga. 2007).

Here, Plaintiffs allege that the individual Defendants acquired and downloaded information that contained trade secrets onto external storage devices. Dkt. No. [9] ¶¶ 4, 9, 43, 52, 63, 70, 74, 77, 99. Further, these acts were taken (a) in violation of several policies requiring employees to keep the information confidential and limited to use for Ferrovial only and (b) for the benefit of Acciona. Id. ¶¶ 1, 8 11, 13, 32–35, 101. Additionally, this large volume of information was downloaded by the individual Defendants, while still in positions of trust at Ferrovial, in close temporal proximity to their resignations and subsequent employment at Ferrovial's competitor, Acciona. Id. ¶ 99. Thus, these facts taken in the light most favorable to Plaintiffs can establish, at a minimum, that the information was acquired through improper means via a breach of a duty to maintain the secrecy of the information. See 18 U.S.C. § 1839(5), (6). Therefore, the Court finds that the Amended Complaint plausibly alleges that Defendants either improperly acquired, disclosed, or used trade secrets.

### D. Defendant Acciona

Finally, Defendants argue that there are no plausible allegations that Defendant Acciona disclosed or used any files from any external storage devices or that Acciona even knew or had reason to know of these devices. Dkt. No. [69-1] at 30–31. Further, Defendants assert that there are no plausible allegations that

Acciona knew any individual had any trade secret information or that Acciona used any trade secret information. Id. at 30–31. Plaintiffs respond that the Amended Complaint alleges that the individual Defendants used and disclosed Plaintiffs' trade secrets for the benefit of Acciona with its knowledge and approval. Dkt. No. [74] at 38–39.

The Court disagrees with Defendants. Here, Plaintiffs have alleged that the individual Defendants' wrongful conduct was "taken at the direction of, or with the tacit approval of, Acciona" and "for Acciona's benefit." Dkt. No. [9] ¶ 101. Plaintiffs further specify that Acciona knowingly benefited competitively because of the individuals' wrongful conduct, through expropriation of Ferrovial's "playbook" and by poaching Plaintiffs' employees through using Ferrovial's master employee list. Id. ¶¶ 13, 70–71, 91, 101. Further, the external storage devices containing this information were plugged into the individuals' Acciona computers, and the information directly correlated to providing Acciona with an advantage in bidding and competing against Plaintiffs for the same jobs. Id. ¶¶ 85, 87, 91–92. Thus, taking these allegations in the light most favorable to Plaintiffs, the Court finds that Plaintiffs have stated a plausible claim for relief against Acciona. Therefore, the Court finds that Plaintiffs' claims are not subject to dismissal.

IV.    **CONCLUSION**

Accordingly, Defendants' Motions to Dismiss [69] is **DENIED**. Plaintiffs have also raised various discovery disputes with the Court. Several of the issues

relate to the scope of the limited discovery allowed at this stage of the litigation, and Plaintiffs have requested that the parties begin formal discovery. Because this Order resolves the Motion to Dismiss, the parties will begin formal discovery. As such, the Court construes the current discovery disputes as **MOOT**.

**IT IS SO ORDERED** this 9th day of March, 2026.

**Leigh Martin May**
**Chief United States District Judge**